## HARTWELL AND WILKINS v. BLOCKER.

1. A bill in equity must be certain, to a common intent, in respect to the case intended to be made by it, and the allegations in aid thereof; and if one who is not the mortgagee, files a bill for the foreclosure of a mortgage intended to secure several promissory notes payable to different persons, he must distinctly state that he is the assignee of all or such of the notes as he claimed, so that his right to sue, and the character in which he sues, may be seen.

2. Where the maker of promissory notes, payable to his own order, executes a mortgage to a third person to secure their payment, he thereby admits that they are valid securities for the payment of money in the hands of the mortgagee, whether regularly indorsed or not.

3. Where a mortgage is executed to secure notes falling due at different periods, if a bill is filed by the holder of the last that matures, it should be stated whether those first payable were unsatisfied, and their proprietors made parties, if known.

4. *Semble :* where a bill is defective for uncertainty, but the objection was not made in the primary court, an appellate court, in reversing the decree, will direct each party to pay his own costs.

WRIT of error to the Court of Chancery sitting at Mobile.

On the 27th of February, 1843, the defendant in error filed his bill, setting forth that on the eighteenth of August, 1836, Eleazer Hartwell and John Hartwell were indebted to Abner S. Lipscomb and George W. Owen, since deceased, in the sum of sixteen hundred and five dollars, by six promissory notes, (particularly described,) for different sums, payable at different times at the Planters' and Merchants' Bank of Mobile. In order to secure the payment of these several notes, Eleazar and John Hartwell

conveyed five tracts of land situate in Mobile county, containing ten acres each; conditioned that the same should be void if the notes should be paid according to their tenor and effect. The bill alleges, that the notes are due and unpaid; and recites, that the complainant is the assignee of Abner S. Lipscomb and Louisa S. Owen, the administratrix of George W. Owen, deceased; and that Eleazar Hartwell, by deed bearing date the 26th of July, 1838, conveyed his interest in the lands in question to John Hartwell.

John Hartwell and Josiah Wilkins, who, it is alleged, holds under him, are made defendants. The bill concludes with a prayer that an account may be taken, the equity of redemption in the mortgaged premises foreclosed, and the lands sold, &c. Further, that process of subpoena may issue, &c.

Subpoena issued on the 1st March, 1843, was executed on Wilkins on the 2d, and on Hartwell on the 3d of the same month; and on 4th of April thereafter, a decree *pro confesso* was entered against the defendants. Thereupon, the notes and mortgage, being produced and proved to the court, were, with the bill, referred to the master to ascertain the amount due and owing to the complainant; and report accordingly at the then term of the court. The master reported, "that on examination of the mortgage, bill and notes, he finds due as follows, to wit: on the 18th August, 1837, a note for $356 34; on the 18th February, 1838, a note for $368 34; with interest on the said notes from the times when they respectively fell due."

On the 11th of April, 1843, during the same term, a motion was made for the confirmation of the report and a decree for the sale of the mortgaged premises. Thereupon, reciting that it was shown to the court, that the parties have had two days' notice of the contents of the report; that no exceptions were filed, and no objection made, it was decreed that the report be in all things confirmed; that the defendants pay into the hands of the register, within sixty days, the amount reported due, with interest and costs of suit: in default therof, the master proceed to sell the property described in complainant's bill and mortgage, or so much thereof as may be necessary to satisfy the decree, in separte parcels or entire, as may best promote the defendant's interest, at public auction, in front of the courthouse of Mobile county, under the same rules and regulations that govern sheriffs in making

sales of like property under execution.   Further, that he give
public notice once a week for thirty days previous thereto, by
publication in some newspaper printed in the city of Mobile; and
also, by posting notice on the door of the courthouse of the county.
The master was directed to report his proceedings to the next
term of the court.

At a further day of the same term, the defendants moved to set
aside the report and order of reference, on the ground that Eleazar
Hartwell had not been made party to the suit.   But the chancellor
was of opinion, that as he had made an absolute assignment of
his interest in the mortgaged property, there was no necessity for
making him a party; and accordingly he overruled the motion.

G. N. Stewart, for the plaintiff in error, made the following
points:

1. It is not expressly charged that the complainant is the as-
signee of the notes and mortgage, but there is a mere general re-
cital of the fact; and even this is not sustained by proof.   [Sto-
ry's Eq. Plead. 205.]

2. The administratrix of George W. Owen, could not assign
the notes and mortgage; upon his death, his heirs acquired rights
in the lands in question.   [Story's Eq. Plead. 184, § 201.]   Be-
sides, the duty of the personal representative is to collect, not to
assign debts due to the decedent's estate.

3. The notes are described in the bill as having been made
payable to the order of the makers and others, but it is not alleged
or proved, that they were ever indorsed, so as to make them de-
mandable.

4. The bill is inconsistent in stating that Eleazar and John
Hartwell made a mortgage to the complainant, when the mort-
gage recited appears to have been made to Lipscomb and
Owen.

5. The whole debt does not appear to have been before the
court, although the bill alleges that all the notes are unpaid; nor
does it appear that the original mortgage was produced.

6. The report of the master was confirmed at the same term
at which it was made, without allowing time to except.

7. It is not charged that the mortgage was recorded, nor does
the proof show that it was within the time prescribed by law, so
that it does not appear that the complainant may proceed against

Wilkins; and in fact, no sufficient reason is perceived for having made him a party.

8. The decree should not have left it to the discretion of the master to sell the property all together, or in separate lots.

9. E. Hartwell should have been made a party. He was a mortgagor, and no deed assigning his interest, appears to have been produced. [Cullum v. Batre, 2 Ala. Rep. 415; Clay's Dig. 355, § 65.]

P. PHILLIPS, for the defendant. The statement, that the mortgage was made to the complainant, is a mere clerical *misprision.* The exhibit shows that Lipscomb and Owen were the mortgagees. Eleazar having conveyed his interest in the premises to John Hartwell by deed, he was an unnecessary party.

As to the propriety of making Wilkins a party, some of the notes were payable to him, and he held the mortgaged premises under his co-defendant; these facts, it is conceived, made him a proper, if not an indispensable party.

The master reported two notes to be unpaid, and the inference is, that the complainant showed no title to any others, or that they were paid. [Redwood v. Levert, 9 Porter's Rep. 79.]

The decree clearly recites, that the appellants had notice that the master's report was made, and that they did not except to it. As to the decree being rendered in the alternative, and investing the master with discretion in the sale, this is authorized by Cullum v. Batre, [2 Ala. Rep. 415.]

The motion to set aside the decree because Eleazar Hartwell was made a defendant, shows that the appellants were in court. They should then have made their objections, and cannot now be permitted to interpose mere technical exceptions to the proceedings below.

COLLIER, C. J.—It was said by Lord Hardwicke, that in pleading, "there must be the same strictness in equity as at law." [2 Atk. Rep. 632.] But Mr. Justice Story says, "however true this may be as to a plea in equity, technically so called, it can hardly be affirmed to be true in the framing of bills or answers, in respect to which more liberality prevails. And it may, perhaps, be correctly affirmed, that certainty to a common intent is

the most that the rules of equity ordinarily require in pleadings for any purpose." [Eq. Plead. 206.]

Uncertainty in a bill, it is said, may arise in various ways: 1. In the case intended to be made by the bill. 2. Though the case intended to be made be certain, yet the allegations of the bill may be vague and general. 3. Some of the material facts may be stated with sufficient certainty, and others again with so much indistinctness or incompleteness as to their nature, extent, date, or other essential requisites, as to render inefficient those with which they are connected, or upon which they depend. [Story's Eq. Plead. 207, et post, and cases there cited.] In Cresset v. Milton, [1 Ves. jr. Rep. 449,] the bill was brought to perpetuate a right of common and way; the allegation was, that the tenants, owners and occupiers of certain lands of a manor, "*in right thereof or otherwise,*" from, &c., had and of right ought to have common of pasture, &c. The bill was held bad on demurrer; for "it was not set forth as common appendant, or as common appurtenant, but as that, "or otherwise," which was no specification at all, and left any sort of right open to proof. So, in Jones v. Jones, [3 Meriv. Rep. 160,] which was a bill by an heir at law to restrain the defendant from setting up an outstanding term, &c.; but as there was no averment of any outstanding terms, it was held bad on demurrer. And where a bill sought a general account upon a charge of fraud, it is not sufficient to make such charge in general terms; but it should point out particular acts of fraud. [Palmer v. Mure, 2 Dick. Rep. 489.] But the complainant is not bound to state *all the minute facts;* the general statement of *a precise fact* is usually sufficient. The circumstances which confirm or establish it, more properly constitute matters of proof than of allegation. [Story's Eq. Plead. 212.]

In the present case, the complainant describes himself as the assignee of A. S. Lipscomb and the administratrix of G. W. Owen, deceased; and after describing the date, and amount intended to be secured by a mortgage to L. and the intestate, the bill continues, "whose interest has been legally transferred and assigned over unto your orator, that certain part or parcel, situate," &c., (here follows a description of the mortgaged premises.) The notes are described as bearing even date with the mortgage, payable some of them to the order of the defendant Wilkins, the others to the order of the makers; and all of them for unequal

74

sums, payable and negotiable at the Planters' and Merchants' Bank of Mobile. It is charged, that although the notes have since been due and payable, yet the mortgagors have failed and refused to pay the same, "whereby the legal estate to the said premises has become absolute in your orator." In all this, there is no allegation that the complainant is the assignee of the notes, or either of them; the inference that such is the fact, is not necessary and direct. It may or may not be so. If the terms in which the case is attempted to be stated, are to be understood as having been employed according to their appropriate use, and with their usual meaning, they rather show that the complainant is the assignee of the mortgage than the notes. And it is not only not alleged that the complainant was the assignee of all the notes, but it is not stated that if either or any of them was assigned to him, which it is.

It may be true, that the mortgage may have been assigned to the complainant by the mortgagees, yet this would not authorize him to file a bill for a foreclosure. In Doe ex dem. Duval's heirs v. McLoskey, [1 Ala. Rep. N. S. 708,] it was determined, that a mortgagee cannot assign the right to the mortgaged property without also assigning the debt to which it is an incident, yet it seems he may relinquish, *by contract*, the possession of the mortgaged premises to a third person until the debt is paid.

Without amplifying the point, it sufficiently appears from what has been said, that the bill is obnoxious to the objection of uncertainty. That even if the case intended to be made by the bill is certain, the allegations are too vague and general to authorize a court of equity to entertain it.

Although some of the notes are payable to the order of the makers, and do not, upon their face, import a promise to pay any one, yet the mortgage is an acknowledgment that they were the property of the mortgagees—that the mortgagors were bound to pay them; and in order to their security, conveys the land described in it. This is quite sufficient to show, that the notes have been transferred by the maker, whether by writing, or mere delivery is wholly immaterial in the present case. True, in order to maintain an action at law upon them, the plaintiff should show a regular transfer; but it is competent for the holder to entertain a suit in equity, though they were transferred by delivery only.

The bill should state of which of the notes the complainant is

the proprietor; if any one of them maturing before those he holds is paid, or outstanding, unpaid, the fact should be stated, and the holder made a party. In respect to subsequent incumbrancers, although they are proper, yet they are not indispensable parties. [Judson v. Emanuel, et al. 1 Ala. Rep. N. S. 598; Cullum, et al. v. Batre's ex'rs, 2 Ala. Rep. 415.]

In respect to the other questions made by the plaintiffs in error, it is unnecessary now to consider them. They are mere questions of practice, about which it is not probable that any controversy will arise in the ulterior progress of the cause; especially if the decisions we have heretofore made touching the interest of surviving payees, the powers of executors and administrators, parties in equity, the registration of deeds, and the duties of masters in chancery, are consulted.

It follows from what has been said, that the decree of the court of chancery must be reversed, and the cause remanded. But inasmuch as no objection to the frame of the bill was taken in the primary court, the defendant in error will not be taxed with the entire costs; each party will pay their own costs in this court.