OWEN v. MOORE & DOBBINS.

1. M sold to D a lot of land, taking from him three notes for the payment of the purchase money, and .executing to him a bond for title. Two of the notes being paid, and the other transferred by M to a third person, M conveyed the land by deed to D, who had previously sold it to J, and assigned to him the bond for title. Held, first, that upon a bill by O, the holder of the unpaid note, to enforce the lien upon the land for the unpaid purchase money, M was not a necessary party. Second, the conveyance of the title by M, to D, did not discharge the equitable lien. Third, that as the title bond described the notes given for the purchase money, and was assigned to J before the last note was due, he was affected with notice of the lien. Fourth, that the equitable lien could be enforced against the land, though D was not shown to be insolvent.

2. An allegation in a bill, that the complainant is the bona fide holder, and transferee of a note, and that the same is unpaid, is, in connection with a copy of the note, exhibited, a sufficient allegation of title.

Error to the Chancery Court at Moulton. Before the Hon. W. W. Mason, Chancellor.

THE bill was filed by the plaintiff in error, and alledges, that about the 26th September, 1837, one Evan Murphy sold to Thomas G. Dobbins a lot of land in the town of Moulton, with the improvements thereon, which is described, for the sum of $1500, by three several writings obligatory, for

$500 each, executed by Dobbins to Murphy, all of which complainant believes to have been paid, except one, which fell due on the first of January, 1841, of which complainant is the *bona fide* transferee and holder, for a valuable consideration, and which is wholly unpaid. At the time of the sale, Murphy executed to Dobbins a bond, conditioned to make title on payment of the purchase money.

That some time afterwards, Dobbins sold, or exchanged said lot, to one John Moore, and executed to him a title bond, or assigned the bond of Murphy to him, and Moore is now in possession of the lot. That on the 11th June, 1838, and after said Murphy had parted with the writing obligatory now in complainant's hands, and without his consent, executed to said Dobbins, a deed for title to said lot, with relinquishment of dower by his wife. Dobbins and Moore are made defendant's to the bill, the prayer of which is, that the lot be sold for the payment of the bond yet unpaid, for general relief, &c.

Moore answered the bill, admitting the material facts alledged, but asserting his belief that the complainant did not become the owner of the bond, until after the purchase from Dobbins, and that he knew of his purchase. He also demurred to the bill, and assigned the following causes of demurrer: 1. That it does not appear from the bill, that the complainant has such an interest in the matter in controversey, as to entitle him to relief.

2. That he does not alledge, that either himself, or his transferror has power to make title to the land on payment of the purchase money.

3. That it is not alledged that Dobbins is insolvent.

Dobbins also answered the bill, and testimony was taken, but the chancellor at the hearing, determined the cause upon the demurrer to the bill, in favor of the defendants, and rendered a decree against the complainant for costs. This is now assigned as error.

J. B. Sale, for the plaintiff in error.

On the hearing of this cause in the chancery court, the respondent, in addition to the grounds of demurrer specially set

81

down in the record, assigned *ore tenus.* another distinct ground, viz: that Evan Murphy was not made a party to the bill. As this was perhaps the chief ground on which the chancellor sustained the demurrer and dismissed the bill, it is presumed it will be insisted on by defendant in error in the supreme court. Therefore—

1. This ground of demurrer, even if the bill were obnoxious to it, should not have been noticed by the chancellor, because it was not assigned in the demurrer of record under the 30th rule of practice. Clay's Dig. 616; Wellborn v. Tiller, 10 Ala. 305. The court there say, this is but the iteration of the English rule upon the same subject, and cite Mitford's Eq. Pl. 214, which says, a "demurrer must express the several causes (or grounds) of demurrer,"—and Story's Eq. Pl. $ 455, which says, "every demurrer (not general) must contain the causes thereof; and they must be set down with reasonable certainty and directness." Nor could it, in the state of the pleadings in this case, be assigned *ore tenus.* 10 Ala. 305, *supra.*

2. But even if the objection were properly taken, the bill is not obnoxious to it, because—1. It could not have been necessary to make Murphy a party complainant to sue on account of the legal title of the note being in him as payee. The assignment by delivery of the note to Owen vested in him the equitable title to it; and in a court of equity the one having such interest may sue in his own name alone, unless another has a subsisting legal interest to be affected by the decree. In a court of law, however, such assignee, or transferee would of course have to be represented by the one invested with the legal title, suing for his use. In Haley v. Bennett, 5 P. 452, and Chapman v. Chunn, 5 Ala. 397, this transaction is identified with the mortgage and all its incidents. Murphy (in this case) being the mortgagee, and Owen his assignee of the mortgage; and it cannot be contended that in the assignee's bill to foreclose (the assignor or mortgagee having no remaining interest) it is necessary for him to join with himself his assignor. Story's Eq. Pl. 183, $ 199, and note 4. See also, note 2 to same book, 149, 2d ed. 1840. 2. Nor was it necessary to make Murphy a party for the purpose of conveying title to the lot upon payment of balance

of purchase money by Moore or Dobbins ; for this bill is not for specific performance. Owen is not a party to the original contract of two parts, and seeking and offering to have each one performed mutually ; but he is assignee of a lien or incumbrance, which he is seeking to enforce and execute by selling the incumbered property, unless the defendants will first exercise their right of redemption. In such suit those only are necessary parties whose rights are to be affected by the desired decree ; but Murphy divested himself of all right, and entirely disconnected himself with the matter when he passed off the note, and conveyed away the title to Dobbins in performance of all his part of the contract; on 11th June, 1838, as alledged and admitted. He has now no interest whatever, unless it should appear (and it does not) that he is still the holder of some of the other notes.

3. The first cause of demurrer set down on record is intended to question the sufficiency of the statement in the bill, of complainant's ownership of the note for purchase money. It is believed that one who is *bona fide* transferee and holder for a valuable consideration, of a note, is at least *prima facie* owner of it ; and proprietorship is as much implied by the terms, as by those of assignee or payee ; which latter, equally with the former, admit the hypothesis of a trust in the party towards whom they are employed. See 1 Ala. 708 ; 10 Ib. 441.

PETERS, contra.

1. The demurrer of defendant, Moore, was properly sustained. Causes of demurrer may be assigned *ore tenus* at the hearing. Both Murphy and M. K. Thomason *&* Co. Murphy's assignees, should have been made parties to the bill. Without them, Owen shows no such title in himself to the note exhibited as would support his pretended equity. The assignor should be joined with the assignee, or be made a defendant, else the bill is demurrable. Story's Eq. Pl. 186, § 153, *et seq.* In this instance it is necessary, in order that complainant might alledge his own or his assignor's ability to make title to Moore, should Moore pay the balance of the purchase money. This would be equality, and equality is equity. The cases of Roper v. McCook, 7 Ala. 318,

and White v. Stover et al. 10 Ala. Rep. 441, do not oppose this position. In both these cases the notes were assigned, and the remedies at law were exhausted.

2. The complainant does not alledge that he has a lien, but only that he never waived his lien. This avails nothing unless he first shows that he had a lien to waive. The allegation about lien might be true, and yet the complainant have no lien, and hence no equity. And a party who seeks to disturb another in the possession of a legal title, ought to show a clear equity. Rucker v. Howard, 2 Bibb, 168.

3. Owen can have no lien except he derives it from Murphy, or Murphy's assignee, who took the equity with the note. But Murphy's equity was waived by his deed to Dobbins. Hall v. Click, 5 Ala. 363; 1 Paige, 506. And Moore being an innocent purchaser for valuable consideration, without notice of Owen's lien, (admitting him to have any lien at all,) and being in possession, the equities are equal, and the possession must be protected.

COLLIER, C. J.—It is difficult to perceive any ground upon which Murphy can be held to be an indispensable party to this suit. As between the plaintiff and defendants he has no such interest as requires him to be brought before the court; the plaintiff does not ask a decree against him, and if he did, we do not think he would be entitled to it. Murphy has no title to the lot in controversy, either legal or equitable, but conveyed it long previous to the filing of the bill, by a deed with warranty to the defendant, Dobbins, his immediate vendee. All this appears upon the bill, is admitted by the answers, and established by proof. True the complainant deduces a title to the demand he is seeking to enforce, mediately from Murphy, and immediately from his assignees; but it is well settled by the decisions of this and other courts, that a derivative purchaser may go into equity for a specific performance against the original vendor without making the individual under whom he immediately claims a party. These adjudications rest upon the principle, that the latter has no interest to litigate and adjust in such a suit; and if the defendant has equities which cannot be brought before the court for decision as against

his vendor, he must assert them by a cross bill, or in some other appropriate mode. We can discover no substantial difference as respects the question of parties between such a suit, and that now before us. See Walker et al v. The Bank of Mobile, 6 Ala. Rep. 452.

Lord Hardwicke said, in pleading "there must be the same strictness in equity as at law," (2 Atk. Rep. 632;) but Mr. Justice Story says, "however true this may be as to a plea in equity, technically so called, it can hardly be affirmed to be true in the framing of bills or answers, in respect to which more liberality prevails. And it may perhaps be correctly affirmed, that certainty to a common intent, is the most that the rules of equity ordinarily require in pleadings for any purpose." Eq. Plead. 267, 3d ed. The same learned author affirms it "as an elementary rule of the most extensive influence, that the bill should state the right, title, or claim of the plaintiff with accuracy and clearness; and that it should in like manner state the injury or grievance of which he complains, and the relief which he asks of the court. In other words, there must be such certainty in the averment of the title, upon which the bill is founded, that the defendant may be distinctly informed of the nature of the case, which he is called upon to meet." Id. 268. But *all the minute facts* need not be stated; the general statement of *a precise fact* is usually sufficient, the circumstances which confirm or establish it, more properly constitute matters of proof than of allegation. Id. 275. See also Hartwell and Wilkins v. Blocker, 6 Ala. Rep. 581; McKinley v. Irvine, at this term.

The complainant exhibits with his bill, a copy of the evidence of debt for which he claims an equitable lien, alledges he is the *bona fide* transferee and holder thereof, and that the same is wholly unpaid.

The exhibit which is a part of the bill, does not disclose an indorsement, or other written assignment of the bill single, and it may therefore be understood that the allegation is, that the complainant holds it as an equitable proprietor, without any written transfer. But independently of the inference from the exhibit itself, does not the character of the complainant's title to the paper sufficiently appear; especial-

ly as his equitable rights are the same, whether he holds it as an indorsee, or by delivery merely upon a valuable consideration; and is not the general statement sufficient to let in proof of the precise fact? It is needless to answer these questions, as it is certain, that the allegation, when aided by the exhibit, relieves the bill from the supposed uncertainty.

The conveyance by Murphy to Dobbins did not discharge the lot from the equitable lien for the purchase money, and the proof shows it was not intended to have that effect. It is well settled, both in England and the United States, that the vendor in the absence of any agreement to the contrary, retains a lien on the land he has *sold and conveyed* for the unpaid purchase money, and that this lien will be enforced against a subsequent purchaser with notice. It is also the law of both countries, that merely taking a bond or note for the purchase money, will be no waiver of the lien. Foster v. The Trustees of the Athenæum, 3 Ala. Rep. 302; Hall, Ex'r, v. Click et al. 5 Ala. Rep. 363, bears no an alogy to the present. There the only question decided was, that a note for the purchase money, indorsed by the vendor without recourse, could not be enforced as an equitable lien upon the land, at the suit of the indorsee against the vendee. This decision was rested upon the ground that so far as the vendor was concerned, his indorsement amounted to a payment and satisfaction; and by express contract he had exempted himself from liability to his indorsee. We have seen that a conveyance of the title by the vendor, cannot impair his lien against a vendee, or one claiming under him with notice; and in the present case, no such effect can be accorded to it.

The bond which was executed by Murphy for the conveyance of the lot in question to Dobbins, is dated the 26th September, 1837, and in its condition recites the amount of the purchase money to be fifteen hundred dollars; payable in three equal payments, on the first of January, 1839-'40 and '41. This bond was assigned by Dobbins to his co-defendant, Moore, previous to the maturity of the first payment, and carried upon its face, a positive notice that the lot had not been paid for. It is then perfectly clear, that Moore was a purchaser with notice, and does not take the property divested of the equitable lien. If the bill single now in ques-

tion, was in Murphy's hands when Dobbins assigned the bond, he was entitled to enforce the lien, and it passed to every subsequent holder of the paper as against the present defendants.

The deed from Murphy to Dobbins cannot have the least influence upon the case. If the latter had conveyed to Moore with warranty, and then become the depository of the legal title, such title would have inured to the benefit of Moore, and made his estate complete. But we have seen that such is not the condition of these parties; Moore is the assignee merely of the title bond, and cannot in virtue of that *indicium* of property, draw to himself the legal title which Dobbins derived from Murphy. See Tillotson v. Doe ex dem Kennedy, 5 Ala. Rep. 407.

In Roper v. McCook and another, 7 Ala. Rep. 318, it was decided, that the equitable lien of the vendor of land, will pass to his assignee of a note taken from the vendee in part payment of the purchase money, and will not be lost, though the assignee neglect to sue the maker for so long a time, as to discharge the assignor from the liablity upon his indorsement. So in White v. Stover et al. 10 Ala. Rep. 441, it was determined, that the lien of a vendor who has conveyed the land to a purchaser, and taken notes for the price, is not waived by passing the notes to another, without indorsement, but may be enforced by such holder, or by the vendor when the notes are returned to him, against a sub-purchaser with notice of the equity.

It will abundantly appear from the citations we have made, that it is not a pre-requisite to the enforcement of an equitable lien, that the complainant should have exhausted his legal remedies without obtaining satisfaction of his demand; and it is therefore quite enough to refer to them, without a more particular notice.

It results from this view, that the bill was improperly dismissed—the decree is consequently reversed, and the cause remanded.