## GARRETT VS. WILLIAMS et al.

VENDOR'S LIEN, ASSIGNMENT, EVIDENCE. etc.:

A vendor of real estate executed a bond for title, taking the vendee's notes for the purchase money. These he afterward assigned, in the usual form, without any restriction. The assignee, after the payment, and without any consideration, executed an instrument releasing the assignor from personal liability by reason of the assignment. The evidence shows that he knew the estate of the vendee, who had died, to be insolvent, and took the notes, relying solely on the vendor's lien. *Held:* That the release of the assignor from personal liability did not discharge the lien, or prevent it from passing to the assignee; that the intention of the parties might be shown by proof of the facts and circumstances attending the transaction.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. J. A. WILLIAMS, Circuit Judge.

*Compton & Parsons*, and *Bell* for appellant.

*N. Carlton*, contra.

ENGLISH, CH. J.:

The case made by the bill and amendment is, in substance, as follows:

On the 20th December, 1872, Marion W. Lewis and wife, Ellen W., sold to Lofton H. Nunn certain tracts of land situated in the counties of Jefferson and Arkansas, composing a plantation known as the "Greenback Place," for $30,000, of which sum $9,000 was paid in money and drafts, and Nunn executed to Ellen W. Lewis, for balance of purchase money, two notes for $10,500 each, one payable 1st January, 1874, and the other 1st January, 1875, each bearing, on its face, interest at eight per cent. from date until paid.

Lewis and wife executed to Nunn a bond to make him a good and sufficient deed to the lands on full payment of the two notes, with interest from the 1st of February, 1873, the time when Nunn was to be let into possession of the lands, as recited in the bond.

The bond also recited that Lewis and wife had, on the 10th of March, 1865, executed a mortgage upon the same lands to Jesse K. Bell, which was held by Lewis G. Garrett (plaintiff in the bill), and upon which there was due a balance of $7,000 or $8,000, which Lewis and wife were to pay, and if they failed to do so, and suit should be brought on the mortgage, Nunn was authorized to pay the debt, and have a credit for the amount paid, on his note for purchase money first falling due.

Nunn went into possession of the lands, and afterwards, sometime in the year 1873, died intestate, and his widow, Annie H. Nunn, was appointed, and qualified, as administratrix of his estate.

Lewis and wife, after his death, assigned the two notes for unpaid purchase money, for value, to Lewis G. Garrett, and executed and placed in his hands a deed conveying the lands to the administratrix and heirs at law of Nunn, to be delivered to them on payment of the notes, etc.

After the notes were assigned to Garrett, Mrs. Nunn, as administratrix of the estate of her deceased husband, sold and conveyed the interest of the estate in the lands to Wm. P. Williams, under an order of the Circuit Court of Jefferson County, sitting in probate.

Part of the consideration of this sale by Mrs. Nunn to Williams, as recited in the deed of conveyance, was that he was to save the estate harmless and free from liability, as to the purchase money due and to become due from the estate upon the lands, etc. This deed bears date March 2d, 1874.

Garrett presented the notes, duly authenticated, to the administratrix of Nunn, for allowance, etc. The estate was insolvent.

Claiming that he, as assignee of the notes, had a lien on the lands to secure their payment, in the nature of a mortgage, he filed the bill in this case, on the chancery side of the Jefferson Circuit Court, to subject the lands to the payment of the notes, etc.

*Vol. xxxi.—16.*

Lewis and wife, Mrs. Nunn, as the widow and administratrix of her deceased husband, his heirs at law, who were minors, and Williams, etc., were made defendants.

A formal answer was put in for the minor heirs, by a guardian *ad litem*, appointed to defend for them. Lewis and wife, Mrs. Nunn, as administratrix, etc., and Williams, answered, etc.

None of the defendants, except Williams, contested the right of Garrett to have the lands subjected to the payment of the notes, etc.

In his answer he admits that the notes were transferred to Garrett by Lewis and wife, on the 24th of January, 1874 (and not at the dates of the assignments), and charges that notwithstanding the formal assignments on the backs of the notes, it was expressly understood and stipulated between Lewis and wife, and Garrett, as part of the contract of assignment and transfer, that the notes were assigned to Garrett, without any recourse whatever, either in law or equity, upon Lewis and wife, and he therefore denies that Garrett acquired any lien upon the lands for the payment of the notes by virtue of the assignments, etc.

On the final hearing of the cause (February, 1876) upon the pleadings and depositions, the court dismissed the bill for want of equity, and Garrett appealed to this court.

*First*—As to the facts relating to the assignment, etc.

The assignments on the two notes, as they appear in the transcript, are alike, and in this form: *"For value, we assign this note to L. G. Garrett."* Signed by Lewis and wife. The assignment on the note due 1st of January, 1875, bears date December 1st, 1873, and the assignment on the note due 1st of January, 1874, is dated December 29th, 1873.

The depositions of Marion W. Lewis, Marcus L. Bell, and of appellant, Garrett, were taken and read upon the hearing.

Lewis states, in substance, the sale of the lands by himself and wife to Nunn, the taking of his two notes for $10,500 each

for balance of purchase money, and the execution to him of the bond for title, etc.; that Nunn went into possession of the lands, and continued in possession until his death, but made no payment upon the notes; that at the time of the sale to Nunn there was a mortgage on the lands, executed by himself and wife to Jesse K. Bell, for about $8,000 or $9,000, which had been assigned to Garrett. Witness, anxious to collect the residue of purchase money, met with Garrett about the 24th of January, 1874, at Pine Bluff, and, after various negotiations, made a trade with him, by which witness paid him the amount of the mortgage, and he paid witness the balance of said notes, except about the sum of $2,800, which witness abated to effect the trade. Witness then transferred to him the two notes of Nunn given for purchase money of the lands. At the date of this transaction Garrett held one of the notes as collateral security for the payment of $1,000, which witness had formerly borrowed of him. The other note was in the hands of Shryock & Rowland, of St. Louis, witness having placed it there as collateral security for about the sum of $3,000, which he had borrowed of them.

After the trade was made (in the office of M. L. Bell), Garrett stepped out of the office, and witness spoke to Bell, and said to him in effect: "I regard you as my attorney as much as Gen. Garrett's, and I wish myself and wife to be released from all liability on account of the transfer of the notes, and that I wanted to endorse the notes without recourse on myself and wife. He replied that that could not be done without releasing Garrett's lien on the lands, but that he would get Garrett to give me a paper releasing myself and wife; and then and there drew up an agreement for Garrett to sign. In a few moments Garrett returned to the office, and he signed the paper prepared by Bell, and delivered it to me."

A copy of this paper is made an exhibit to the deposition of the witness.

Witness did not endorse the notes at the time he sold them to Garrett. He had endorsed one of them when he hypothecated it to Shryock & Rowland for $3,000, and had endorsed the other note to Garrett when he borrowed from him the $1,000. His understanding was that the paper above referred to released himself and wife from all recourse as assignors of the notes, but this matter was not mentioned pending the trade with Garrett. At the time witness traded the notes to Garrett his understanding was that there was but little property belonging to the estate of Nunn, except the "Greenback Place," and that the estate was largely indebted, and this induced him to make the trade with Garrett.

His understanding when he made the trade with Garrett was that the lien upon the lands was transferred with the notes, though nothing was said about it between himself and Garrett.

Witness delivered to Garrett, when he sold him the notes, a deed executed by himself and wife to the administratrix and heirs of Nunn for the lands, to be delivered by him to them on the payment of the notes.

Witness also gave to Garrett, at the time of the trade, an order on Shryock & Rowland to deliver to him the note they held, upon payment of a draft which witness had forwarded to them in payment of his indebtedness to them.

The paper referred to in, and made an exhibit to the deposition of Lewis follows:

"Whereas, I hold a note of M. W. Lewis' for $10,000, dated in 1865, in favor of Jesse K. Bell, secured by mortgage, signed by M. W. Lewis and Ellen W. Lewis, on what is known as the "Greenback Plantation," on which note and mortgage there is now due a balance of $8,914. Now, I have this day purchased of M. W. Lewis two notes of L. H. Nunn, dated 20th December, 1872, for $10,500 each, due in one and two years, with eight

per cent. interest from date, and which are a lien on said Greenback plantation, and the said balance of the $10,000 note, and mortgage of $8,914, is a part of the purchase money which I pay for the said two notes of L. H. Nunn; and said M. W. Lewis and E. W. Lewis are hereby released from said notes personally, and I look to my lien upon the said plantation for my payment.

(Signed,)      L. G. GARRETT."

January 24th, 1874.

Marcus L. Bell, in his deposition, after giving a history of the sale of the lands by Lewis and wife to Nunn, the taking of the two notes for balance of purchase money, the execution of the bond for title, etc., states, in substance, that he was present at the various times when Lewis and wife transferred the notes to Garrett; that they were transferred on the respective dates as appears from the endorsements on the notes. They were transferred for their full value, the first one to pay what is known as the "Bell Mortgage" on the lands, which Garrett held, and for money paid at the time. The second note was transferred for cash value received. Witness was present and made the transfer from Lewis and wife to Garrett, as the attorney for both parties, by consent. It was distinctly understood, and agreed at the time of the transfer of said notes, that they were a lien upon the lands known as the "Greenback Plantation," and Lewis and wife transferred all their rights to Garrett, legal and equitable, and executed a deed for the lands, in due form of law, to the widow and heirs of Nunn, and when the notes were finally transferred to Garrett, placed the deed in his hands to be delivered to them on payment of the notes. At the time of the agreement between Lewis and wife and Garrett to transfer the notes, the last named note was in St. Louis, in the hands of parties there, and was afterwards sent to witness, and a proper endorsement placed thereon, and the note delivered in accordance with the previous

agreement. After the contract was made between Lewis and wife and Garrett for the assignment of the notes, and after Lewis and wife had given an order to Garrett for the note then in St. Louis, they requested Garrett to release them from liability as endorsers on the notes, stating that they were insolvent, and that the lands were amply sufficient to secure the notes. Garrett replied that he could not release them as endorsers; but, inasmuch as they were insolvent, and as a special favor to them, and without any further consideration, he would give them a statement in writing that he would not look to them for payment of the notes as endorsers, but would look to the lands for payment, they being deemed ample security. It was well known to Lewis and wife and Garrett, at the time said transfer was made, that Nunn's estate was wholly insolvent, and there was no security for said notes whatever, nor any means belonging to said estate, to pay the same, outside of the said lands, and Garrett, in purchasing said notes, relied entirely upon his lien upon said lands to secure the payment thereof.

Garrett testified, in substance, that he purchased the notes of Lewis and wife some time in January, 1874; that Nunn was dead, and he understood that his estate was insolvent, and that there was no other property to pay the notes except the lands for which they were executed, known as the "Greenback Plantation." His understanding at the time he purchased the notes was that Lewis and wife were transferring to him, with the notes, their vendor's lien upon the lands, otherwise he would not have purchased them. It was part of the agreement, as he understood it, that the lien upon the lands was transferred with the notes, the estate of Nunn and Lewis and wife being insolvent. The first note was placed in his possession some time, probably twenty days, before he finally purchased the notes, and was endorsed by Lewis and wife. When the trade was finally made, about the 24th of January, 1874, Lewis informed him that the other note

was in St. Louis, and gave him an order on Shryock & Rowland for the note, and the note was afterwards delivered to him duly endorsed by Lewis and wife.

After the trade was made, and the notes transferred, Lewis asked witness to release him from personal liability on the endorsement, and witness executed the paper attached to the deposition of Lewis.

No consideration was paid witness for the execution of this instrument. It was no part of the contract for the transfer of the notes. It was executed at the request of, and as a favor to, Lewis, witness believing the lands good for the debt, and Lewis insolvent.

He purchased the notes at what he considered a discount of between $1,500 and $2,000.

*Second*—As to the law of the case.

It is well settled by the decisions of this court that where the vendor gives a bond to make title on the payment of notes given for the purchase money by the vendee, the transaction is a security for the debt, and the same in effect as the making of a deed, and taking a mortgage back to secure the payment of the notes; and that the assignment of a note, thus secured, carries the lien or security with it, as an incident to the debt. *Smith* v. *Robinson et al.*, 13 Ark., 533; *Moore* and *Cail, adm'rs*, v. *Anders*, 14 Ark., 635; *Campbell* v. *Rankin et al.*, 28 Ark., 405.

In *Moore* and *Cail* v. *Anders*, Chief Justice Watkins delivering the opinion of the court, said: Whenever we assimilate the sale of land, by means of a bond, etc., to make title on payment of the purchase money, to a conveyance, and mortgage back to secure the same end, the usual incidents of a mortgage attach to the transaction, and the rights of the parties growing out of it are to be governed by analogous rules. The weight of authority, no doubt, is that the equitable lien of the vendor

(that is where a deed has been made acknowledging the payment of the purchase money) is personal to him, and is not, unless under some peculiar equitable circumstances, assignable, etc. But clearly the lien, under a bond for title on · payment of the purchase money, being expressly reserved by contract tantamount to a mortgage security for the benefit of the vendor, and the note for the purchase money transferable like any other chose in action made assignable by law, the assignment of the note tacitly carries with it the vendor's lien by way of mortgage security, as an incident to the debt."

The same learned judge further said in that case: "The right of a purchaser to a conveyance, depends upon the payment of the note by him, or by some one who has become subrogated to his rights (as was the case in *Smith* v. *Robinson*), and not upon the fact that the vendor has received the money upon the note, if it be still outstanding against the purchaser, and this would be so, though *he had endorsed it without recourse*, or though he should become discharged by the laches of the holder as at the law merchant, or by his failure to pursue the maker with due diligence to insolvency under the statute of assignments, or supposing the assignor's liability upon the contract of assignment to become barred by limitation."

There is much plausibility in the remarks, but the question whether the lien of the vendor passes to the assignee of the note for purchase money, where the vendor assigns it without recourse, was not before the court in *Moore* and *Cail* v. *Anders*.

But this question was before the court in *Williams et al.* v. *Christian*, 23 Ark., 256.

Christian sold lands to Hundley, took notes for the purchase money, and gave him a bond for title. Christian assigned the notes to Williams and others in payment of a debt he owed them without any recourse upon them. Williams et al. filed a bill to

enforce the vendor's lien, etc.   The bill charged that the assignment between Christian and the plaintiffs was that the vendor's lien of Christian should be transferred with the notes, but this was strongly denied by the answer of Christian, was not sustained by proof, and was inconsistent with the terms of the assignment.

Upon the case thus made, Mr. Justice Fairchild delivering the opinion of the court, said:   "We hold that the restricted assignment of the notes in this case does not transfer any lien upon the lands mentioned in the bill to plaintiffs, etc.   The acceptance of the notes so assigned seems to us *to imply a reliance upon the personal responsibility of the maker of the notes."*

In the case now before us the assignments upon the notes were not restricted, but in the usual form, and the evidence utterly forbids the implication that Garrett relied upon the personal responsibility of the maker of the notes, or the solvency of his estate, when he purchased the notes.   It is incredible that he surrendered to Lewis and wife a debt of nearly $9,000, secured by a mortgage upon the lands senior to their lien, and paid them about $10,000 in money, for the notes of Nunn, relying upon the personal responsibility of the maker of the notes, whom he knew to be dead, and his estate insolvent.

In the paper by which Garrett released Lewis and wife from personal liability upon their endorsements, his attorney was careful to state that he looked to and relied on his lien upon the lands for payment of the notes, in order to preclude any implication to the contrary from such release.

The personal release of Lewis and wife from responsibility upon their endorsement, by Garrett, was in no way prejudicial to any legal or equitable rights of the representatives of Nunn, or of Williams, who purchased the lands of his administratrix, after the assignment of the notes to Garrett.   The release of the wife,

who perhaps was not legally responsible upon her endorsement, and of the husband, who was insolvent, was of but little concern to Garrett, and certainly of none to Williams. It seems to have been made without consideration, and as a matter of favor to Lewis.

The counsel for appellee insists that Lewis and wife having been paid their money on the notes, and released from recourse on their endorsements, their lien upon the lands was thereby absolutely extinguished, and could not pass to Garrett, though it may appear from the evidence that he contracted for the lien, and purchased the notes upon faith that the lien accompanied them into his hands.

Such would have been the law of the case had the lien of Lewis and wife been merely equitable—that is, had they conveyed the lands to Nunn by absolute deed, reserving upon its face no lien upon the lands for the payment of the notes given for the purchase money; and it is to that class of liens that most of the cases cited by counsel apply. Indeed we have gone further, and held that such liens are personal to the vendor, and not assignable at all. *Shall, adm'r., et al.* v. *Biscoe,* 18 Ark., 162. *Hecht* v. *Spears,* 27 Ark., 230.

In all of the decisions of this court on the subject of vendor's liens, the distinction between the equitable lien of the vendor, and that retained by a reservation of the legal title has been kept in view.

In *Bernays et al.* v. *Feild et al.,* 29 Ark., Feild & Dolley holding title to the land, assigned a note for the purchase money to Benedict, Hall & Co., by which the vendor's lien passed to them, and they afterwards reassigned the note to Feild & Dolly without recourse, and the court held that title and the debt being again united in their hands, the lien revived in their favor, notwithstanding the decision in *Williams et al.* v. *Christian.*

In *Giggsby* v. *Hair*, 25 Ala., 331, the court said: "It is true, if a note (for purchase money) is assigned without recourse by the vendor, it amounts to an abandonment of the lien on his part, and his assignee can work out no equity to subject the land through him. But whether or not the parties intended to abandon such lien, is a matter of fact to be gathered from the evidence and the nature of the transaction."

In this case it is impossible to avoid the conclusion, from the evidence, that Garrett contracted for and relied upon the vendors' lien in purchasing the notes.

That the intention of the parties in such cases may be shown by proof of the facts and circumstances attending the transaction, is in accordance with the decision of this court in *Lavender et al.* v. *Abbott, adm'r.*, 29 Ark., where it was held that it might be shown that the vendor did not intend to abandon his lien by taking other security for the purchase money.

Williams has no claim to be regarded as an innocent purchaser for value without notice, etc. When he purchased the lands of the administratrix of Nunn, the legal title was in Lewis and wife; their bond for title, reciting the notes for purchase money, was on the public records; he purchased only the interest of Nunn's estate in the lands, and part of the consideration for his purchase, as recited in the deed executed to him by the administratrix, was that he was to protect the estate against the outstanding notes for purchase money, etc.

The decree of the court below must be reversed, and the cause remanded with instructions to it to render a decree in favor of appellant against the administratrix of Nunn for the amount of the two notes and interest, and condemn the lands to be sold for the satisfaction of the debt, etc.

The court will appoint a commissioner to sell the lands, on the usual public notice, the sale to be on a credit of not less than

three nor more than six months, and on the payment of the pur-
chase money, and confirmation of the report of sale, the court
will decree the title of the lands to the purchaser, and direct the
commissioner to make him a deed.

Williams will have to the day fixed by the court for the sale,
to redeem the lands, and if he redeem them by paying the de-
cree, on report of the redemption to the court, he having made
his answer a cross-bill praying to be protected in his title, etc.,
the court, upon his cross-bill, will decree the legal title of the
lands to him.

Mrs. Nunn made her answer a cross-bill, praying that if she
had to pay anything on the notes, out of the assets of Nunn's
estate, she might have a decree against Williams for the amount,
under the provisions of the deed executed by her to him.

If Williams fails to redeem the lands, and if the lands fail to
sell for enough to pay the decree, and if any sum is paid upon
the decree by Mrs. Nunn as administratrix out of the assets of
Nunn's estate, the court can then consider and dispose of her
claim to relief upon the cross-bill.

The costs of this court will be adjudged against Williams, he
being the only party that contested the claim of appellant to a
decree against the lands.