Griggsby v. Hair.

## GRIGGSBY vs. HAIR.

1. Where several notes, taken for the purchase money of land, are assigned at different times, the assignment of each note is, *pro tanto*, an assignment of the vendor's lien, unless expressly waived, and the liens of the several assignees are to be preferred according to the priority of their assignments, without reference to the maturity of the notes.
2. An assignment of a note without recourse by the vendor, amounts to an abandonment of the lien ; but whether or not the parties intended to abandon the lien, is a matter of fact to be gathered from the evidence and the nature of the transaction.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. J. W. LESESNE.

THIS bill was filed by Samuel M. Griggsby against James Hair, to obtain the legal title to a tract of land which the defendant held, and to enjoin him from further proceedings in an action at law to recover possession of it.   The complainant alleges that, in 1837, one John M. Bolling sold the said tract of land to one Frederick P. Evans, and executed to him a title bond conditioned to make a good and valid title to said land upon receiving full payment of the purchase money; that said Evans executed his notes for the purchase money, with one Joseph Arrington as his surety ; that said Bolling afterwards, about the year 1838, endorsed one of said notes,

dated March 1, 1837, and due January 1, 1838, for valuable consideration, to one William H. Keeland; that Keeland brought suit on said note against both Evans and Arrington, and obtained judgment thereon against them, on which judgment an execution was issued, which was returned with a partial credit and unsatisfied as to the residue; that Keeland afterwards, on the 7th of May, 1846, filed his bill in chancery to enforce his lien upon the land for the balance of the purchase money remaining due on said judgment, but, through the mistake of the solicitor who drafted the bill, said Evans only was made a defendant thereto, and the name of said Bolling, who owned the legal title, was entirely omitted; that a decree was rendered in said cause, after regular proceedings, foreclosing said Evans' equity of redemption in said lands, and ordering a sale thereof to satisfy the balance due on said judgment; that said land was accordingly sold by the master, pursuant to said decree, on the first Monday in December, 1847, at which sale complainant became the purchaser, and received the master's deed to the land; that complainant, before the rendition of said decree, "had purchased the said claim so endeavored to be enforced in equity," of which he is still the owner, and which is still unpaid except as above set forth. The bill further alleges that Wm. & R. Kelly also exhibited their bill in chancery, as general creditors. against said Evans and Bolling, to subject the former's equitable estate in said land to the payment of a judgment which they had obtained against him, on which an execution had been issued and returned " no property found"; that neither complainant, nor said Keeland, was made a party to said bill; that the complainants therein obtained a decree and an order for the sale of said land, at which sale the defendant became the purchaser, "whereby he became possessed of the legal estate in the same, subject to complainant's said equitable lien for the unpaid purchase money"; that complainant publicly forbid said sale, and gave notice of his said equitable lien on the land, and that Hair purchased with full knowledge thereof; that Hair afterwards instituted an action at law against complainant to recover said land, and having the legal title thereto, succeeded in obtaining judgment. The bill prays for a perpetual injunction of this judgment, and that

Griggsby v. Hair.

defendant may be held a trustee for complainant of the legal title to said lands.

Hair answers, alleging that said note on which the Kellys obtained judgment was one of the notes given by said Evans for the purchase money of said land ; that Kelly's said bill, under which respondent became the purchaser, was not a "general creditor's bill," but was filed for the purpose of subjecting the equitable estate of said Evans, as well as the legal estate of said Bolling in said land, to the satisfaction of their judgment at law for the unpaid purchase money ; that the solicitor who drafted Kelly's bill made a clerical mistake, in alleging that their note was transferred without recourse on Bolling ; that the Messrs. Kelly were entitled to preference over said Keeland,—their note having been first assigned, their judgment first obtained, their bill in chancery first filed, and their decree first obtained ; that respondent, having become the purchaser at the sale under Kelly's decree, forbid the sale under Keeland's decree, and gave public notice that the purchaser would get nothing but a law-suit.

The records of the chancery suits of said Keeland and Kellys, which were used as evidence in this case, show that the note under which said Kellys claimed was assigned in September, 1837, while Keeland's was transferred in January, 1838 ; that Kellys' judgment was obtained in February, 1845, and Keeland's on the 7th of May thereafter ; that Kellys' bill was filed in April, 1846, and his decree obtained in January, 1847, while Keeland's bill was filed in May, 1846, and his decree obtained in June, 1847 ; that the sale at which Hair became the purchaser was made in September, 1847, while the sale at which Griggsby purchased was made in December, 1847.

The chancellor dismissed the bill, and his decree is now assigned for error.

R. H. SMITH, for the appellant :

Hair by his purchase did not become invested with any general (outside) equities in the debt, on which the decree was based, possessed by the Kellys, but not enforced by the bill. The bill did not make the case of equitable lien, but made the case of a creditor without lien (under Hall v. Click,

5 Ala. 363); but yet, having a judgment, and return of "no property," which entitled him to subject any equitable estate of his debtor. The decree under which Hair bought was in harmony with this right. Hair, then, bought, not the debt and its incidents, liens, &c., but a right enforced by a particular process. In solving Hair's rights we cannot look to Kelly's liens, but to his bill, and by it no mortgage lien existed. Hair, then, bought Evans' right, such as it was.— That was subservient to Griggsby's lien, and it is no answer that Kelly, or some one else, may by proceedings over-ride Griggsby. The answer is, though it be so, and should be enforced, this cannot be tacked to Hair's title.

JAMES HAIR, *pro se*, contended that a title bond has all the equitable incidents of a mortgage (5 Porter 452) ; that the transfer of a debt, unless otherwise expressed, is a transfer of the mortgage also (Duval v. McLosky, 2 Ala. 192) ; that the assignees of several notes given for the purchase money of land are entitled to priority of payment out of the trust fund in the order of their assignments, and not according to the maturity of the notes (Nelson v. Hatch, 15 Ala. 501); that the allegation in Kelly's bill, that Bolling had transferred the note without recourse, was a mistake of the solicitor who drew the bill, which was clearly shown by the evidence in this case ; that the sale under Kelly's decree vested in the purchaser all the right, title, interest, claim, and demand, which both Evans and Bolling had in and to the land; and that therefore the purchaser at the second sale took nothing.

CHILTON, C. J.—The decree of the chancellor is clearly correct. The bill concedes that Hair has the ·legal title to the land in controversy, and seeks to make him a trustee for the complainant, Griggsby, who insists that he is the equitable owner, having purchased it under a decree ordering a sale for the purchase money,· whereas Hair only acquired the equitable rights of Evans,—an equity subordinate to that which exists in favor of the vendor by virtue of his lien for the purchase money. It is quite clear, however, upon an examination of the record, that the decree, under which Hair purchased,

was rendered upon a demand which not only created a lien upon the land, being for a portion of the purchase money for the same, but a lien older, as between these parties, than that set up in the bill of Griggsby. The notes upon which the decree of the Messrs. Kelly was predicated, appear to have been transferred by Bolling before the transfer to Keeland; and the rule is settled, that where several notes are secured by mortgage, and they are assigned at different times, the assignment of each note is, *pro tanto*, an assignment of the security, and the liens of the several assignees are to be preferred, according to the priority of the assignments, without reference to the maturity of the notes.—Nelson & Hatch v. Dunn *et al.*, 15 Ala. 501; Cullum v. Erwin, 4 *ib.* 452; 2 Story's Equity Juris., § 1233, p. 600, n. 1, 3rd ed.; Hop. Ch. Rep. 569.

Liens for the purchase money are regarded in the nature of equitable mortgages, and we see no reason why the rule above referred to should not be applied to them. It is true, if a note is assigned without recourse by the vendor, it amounts to an abandonment of the lien on his part, and his assignee can work out no equity to subject the land through him. But whether or not the parties intended to abandon such lien, is a matter of fact to be gathered from the evidence, and the nature of the transaction.—Hall's Ex'r v. Click, 5 Ala. 363.

It may safely be asserted, as a principle deducible from the decisions of this court, that where the vendor transfers a note, secured by a lien of this nature, either by endorsement or delivery, and binds himself for its payment to the assignee or transferree, the lien on the land, unless expressly waived, is retained, and passes as an incident to the note, and may be enforced by the assignee. The contrary doctrine, as intimated in the decisions of some of the courts, has been rejected as unsound by our predecessors.—See Roper v. McCook & Robertson, 7 Ala. 323, where Collier, C. J., said, "the reasoning on which they rest is by no means satisfactory, and they lead to consequences which should be avoided."

It appears, however, that in the bill filed by the Messrs. Kelly it is averred, that Bolling transferred the notes *without recourse;* and under the decision of Hall v. Click, *supra*, the

chancellor refused to make a decree to enforce the vendor's lien, but rested it upon the ground that the complainants had obtained a judgment, and exhausted their legal remedy, upon one of the notes, as against Evans and Arrington, and consequently had the right to file a bill to subject the equitable interest of Evans, as well as the legal title of Bolling, to its satisfaction.

The averment, that the notes were assigned or transferred without recourse on Bolling, as we have said, was not correct, as is shown by the proof in the record now before us. It was evidently a mistake or inadvertence of the complainants or their solicitor; but without stopping to notice the effect which the proceedings had upon that bill may have upon a subsequent suit to enforce a lien, should one be filed by the Kellys, it is sufficient for the purpose of this decision, that the decree, coupled with the sale to Hair, passed all the title, both legal and equitable, which Bolling and Evans had in the land, to Hair. There was nothing, therefore, upon which the subsequent decree could operate, and we agree with the chancellor, that so long as the decree under which Hair's title was acquired remains unreversed, that title must remain unaffected by any subsequent decree rendered in a suit to which neither the Kellys, Bolling, nor Hair, were parties.

Let the decree be affirmed.