# Bankhead *et al.* v. Owen.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Transfer of note by delivery.*—When a promissory note is transferred by delivery merely, without indorsement, the law implies an obligation, on the part of the transferror, to answer for the genuineness of the note, and his own authority to transfer it; but, as a general rule, he incurs no other liability by such transfer, and his connection with the note as a party ceases.

2 *Vendor's lien, and against whom asserted.*—The principle must be regarded as settled in Alabama, that, in the absence of an agreement to the contrary, the vendor retains a lien on the land for the unpaid purchase-money, although he has conveyed by absolute deed, reciting therein that the purchase-money has been paid; which lien will be enforced against all persons, except a *bona fide* purchaser without notice.

3 *Same; when passes by transfer of note.*—The transfer of a promissory note, given for the purchase-money of land, by delivery merely, without recourse on the vendor, or liability on his part, does not carry with it the right to enforce the vendor's lien on the land.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 16th June, 1876, by Mrs. Martha H. Owen, a married woman, suing by her next friend, against the personal representatives and heirs-at-law of George M. Garth, deceased, to-wit: William S. Bankhead and his wife, Catharine M. (formerly the widow of said Garth), as administrator and administratrix of said Garth's estate, and Kate G. and George Garth, his infant children; and sought to subject a tract of land, which said decedent had bought from one M. W. Mayes, to the payment and satisfaction of one of the notes given for the purchase-money. The land was sold and conveyed by said Mayes to Garth on the 3d December, 1859, at the price of $3,900; for which Garth executed his two promissory notes, each for $1,950, falling due on the 1st January, 1861, and 1862, respectively, with interest from 1st January, 1860. Garth died in 1862, and letters of administration on his estate were granted, in 1866, to his widow, who afterwards married said William S. Bankhead; and his estate was declared insolvent on the 17th August, 1868. In 1867, M. W. Hayes, the vendor of the lands, who was the father of the complainant, filed a bill in chancery against said administratrix, to subject the lands to the payment of one of the notes given for the purchase-money; alleging that he had transferred the other note to Isaac N. Owen, who was made a defendant to the bill, and

that said Owen was willing to become a party ; and express-
ing a willingness to have the land sold for the satisfaction of
both of the notes.   Garth's heirs were not made parties to
that suit.   Decrees *pro confesso* were taken against both of
said defendants ; and a decree was rendered, in May, 1868,
declaring a lien on the land in favor of the complainant,
and ordering a sale of the lands to pay the amount due on
his note, which was over $3,000.   At the sale by the register
under this decree, in September, 1868, said Mayes became
the purchaser, at the price of $100, under a written agree-
ment between him and said Owen, prior to the sale, that he
should make the purchase for their joint benefit, and that
each should have an interest in the land in proportion to the
amount of his debt.   The sale was reported to the court,
and confirmed by the chancellor ; and a deed was made to
Mayes by the register under the order of the court.   On the
19th December, 1868, Isaac N. Owen sold his note and his
interest in the land to Mrs. Owen, the complainant in this
suit; and on the 30th December, 1868, Mayes sold and con-
veyed the land to her by deed with covenants of warranty.
The consideration of the purchase from Owen was $600, and
the deed from Mayes recited as its consideration the pay-
ment of $965.   The infant heirs of Garth, not having been
made parties to the bill filed by Mayes, brought an action at
law, in 1876, to recover the land ; and thereupon the bill in
this case was filed.

The bill alleged that the complainant was the owner and
holder of one of said notes given by Garth for the purchase-
money of the land, which was made an exhibit to the bill,
and that it was a lien on the land ; but it did not state how
she acquired the note.   The defendants denied that the
complainant was the owner of the note, and denied that it
was a lien on the land; averred that the lien on the land
had been waived and relinquished by Isaac N. Owen; set
up the proceedings in the chancery suit by Mayes, as a bar
to the relief sought by the bill; pleaded the statute of limi-
tations of six and ten years, and the failure of the complainant
to file the note as a claim against the insolvent estate of Owen ;
and demurred to the bill for want of equity, because it did
not show how and when the complainant acquired the note,
and because it showed that her claim was barred by the
statute of limitations.

The complainant took the depositions of said Isaac N.
Owen, and A. G. Owen, her husband ; and this was all the
evidence offered on her part, except the bill and exhibits.
The defendants offered in evidence, besides the answer and
exhibits, a transcript of the proceedings had in the chancery

suit by Mayes, and a transcript of the proceedings had in the matter of the insolvent estate of Garth. The note, as exhibited, showed no written transfer or indorsement. In reference to his transfer of the note to the complainant, Isaac N. Owen testified as follows : " On the 19th December, 1868, I transferred my interest in said note to Allen G. Owen and his wife, Martha H. Owen, for six hundred dollars, they paying all lawyer's fees and court costs ; and with the understanding from Mr. Mayes that he would make a deed to the lands to Mrs. Owen, he being the purchaser at the register's sale. I consider Martha H. Owen as the owner of said note, and it is now filed in the Probate Court of said county." " I did sell my interest in said land to Martha H. Owen, and took the joint obligation of her and her husband for the same. I have no recollection of making any written agreement, as the title was in her father, Mr. Mayes, and he was authorized by me to make her a title to it." " The note was transferred to me, by delivery, by Allen G. Owen. The consideration of said transfer was to secure a debt owed to me by Owen & Sale, Owen & Mayes, and A. G. Owen individually. I transferred said note, as aforesaid, to M. H. Owen and A. G. Owen. The consideration of said note has not been paid in full. A. G. Owen has paid me four or five hundred dollars, but still owes me," &c. The testimony of A. G. Owen, as to the transfer of the note, was substantially the same.

On final hearing, on pleadings and proof, the chancellor overruled all the defenses set up by the respondents, and rendered a decree for the complainant ; and his decree is now assigned as error.

CABANISS & WARD, with whom was D. CLOPTON, for appellants, made the following points : 1. The complainant stands in no higher or better position than Isaac N. Owen, her transferror, occupied.—*Coster's Executors v. Bank of Georgia*, 24 Ala. 37. But Isaac N. Owen had no lien on the land, because the entire lien was exhausted by the proceedings had in the former suit, to which he was a party ; and he must be held to have waived his lien, by accepting a proportionate interest in the lands under the purchase by Mayes. If a third person had bought at that sale, he would have acquired a good title to the lands, except as against Garth's heirs, who were not parties to the suit. Mayes and Isaac N. Owen are equally concluded by that suit.—*Hunt & Frowner v. Acre*, 28 Ala. 580 ; *Locker v. Palmer*, 26 Ala. 312 ; *Ryder v. Innerarity*, 4 Stew. & P. 32 ; *Day v. Preskett*, 40 Ala.

[Bankhead v. Owen et al.]

624; *Williamson v. Ross*, 33 Ala. 509; *Butler v. Williams*, 5 Heiskell, 241; *Church v. Smith*, 39 Wisc. 492.

2. The lien was lost by the statute of limitations of six years, which barred all remedy at law on the note. As the vendor had conveyed by absolute deed, taking no mortgage or other security on the land, the case does not fall within the influence of *Driver v. Hudspeth*, 16 Ala. 384; and *Relfe v. Relfe*, 34 Ala. 500.

3. The debt was extinguished, by the failure of Mrs. Owen to file it as a claim against the insolvent estate of Garth.

4. The suit was barred by adverse possession for ten years under conveyance of the legal title.

PHELAN & WHEELER, with whom was THOMAS H. WATTS, *contra*.—1. A vendor's lien is in the nature of a mortgage, and is not affected by the bar of the statute of limitations at law.—*Driver v. Hudspeth*, 16 Ala. 384; *Relfe v. Relfe*, 34 Ala. 500; *Mahone v. Haddock*, 44 Ala. 90.

2. Estoppels must be mutual. These defendants were not parties to the former chancery suit, and are not concluded by it; hence, neither the complainant nor Isaac N. Owen can be bound or estopped by it.— *Gwynn v. Hamilton*, 29 Ala. 233, and authorities there cited.

3. The vendor's lien passes by an assignment of the note for the purchase-money, even when the assignment is by delivery merely. The doctrine has been so settled in Alabama for thirty years, and the profession has acquiesced in its correctness.—*White v. Stover*, 10 Ala. 441; *Conner v. Banks*, 18 Ala. 42; *Kelly v. Payne*, 18 Ala. 371; *Griffin v. Camack*, 36 Ala. 695; *Magruder v. Campbell*, 40 Ala. 611; *Day v. Preskett*, 40 Ala. 624. These decisions are not in conflict with the cases which hold that, where the assignment is, by express agreement, "without recourse," the lien does not pass.—*Hall's Executors v. Click*, 5 Ala. 463; *Roper v. McCook*, 7 Ala. If a transfer by delivery does not carry with it the vendor's lien, then it destroys and extinguishes that lien, since the transferror could not enforce it after he had ceased to own the debt; which would be a very singular result, and certainly not within the contemplation of the parties. The lien is but an incident to the debt, and follows the debt in the hands of an assignee, in the absence of an express agreement to the contrary. It is but an equitable remedy for the enforcement of a debt, and may be asserted by the owner of the debt. In equity, the general doctrine is, that a security for a debt follows the debt, and may be asserted by the assignee in his own name; and the whole doctrine of subrogation is but an extension and application of this principle.

BRICKELL, C. J.—The primary question, rendering all others unimportant, presented by this record, is, whether a transferree by delivery of a promissory note, the consideration of which is the purchase-money of lands,—the transfer not being attended by any agreement, or by circumstances, which charge the vendor with a liability for the ultimate payment of the note, or of the consideration passing to him on the transfer, if the note is not available,—can assert and enforce the equitable lien of the vendor.

As a general rule, the holder of a promissory note, parting with it by mere delivery, must be understood to mean, he will not be responsible for its payment. A special indorsement, in the words usually employed, "*without recourse*," is an express declaration of the absence of responsibility. It is no more than the expression of the implication of the law from a transfer by delivery merely ; and, except as passing the legal title to instruments which, under the statute, are made assignable, and are not by the law-merchant negotiable by delivery, its operation and effect, as between transferror and transferree, is that of a transfer by delivery. Assuming to transfer, whether by indorsement, or by mere delivery, necessarily implies the genuineness of the instrument, and the right to transfer; as is always implied, when power is exercised, that there is a right to exercise it, and a subject-matter over which it may be exercised. All this is implied in the ordinary transactions of business. A debtor may pay to his creditor bank-notes, and they may be accepted without a word from the one to the other,—without any warranty of their genuineness ; yet, if they prove to be fictitious, the obligations of good faith and conscience require that he should answer for their genuineness. Without the imputation of criminality to him, and of gross folly, or of criminality to the creditor, it cannot be supposed he would tender, or the creditor accept, payment in spurious notes. But, if the notes are genuine, and, without knowledge that the bank has failed and become insolvent, he pays, and the creditor receives, the loss falls upon the creditor. This has long been the settled law of this State.—*Lowry v. Murrill*, 2 Port. 282. So, if a promissory note is transferred, whether by delivery, or by a general indorsement, or a special indorsement declaring an absence of liability to answer for its ultimate payment, the law implies an obligation to answer for its genuineness, and an affirmation of authority to transfer. If the transfer is by delivery merely, and the genuineness of the note, or the authority to transfer, is not matter of dispute, the transferror ceases to be a party to the note, and incurs no responsibility.—Story on Prom. Notes,

§§ 116–17 ; 2 Parsons on Notes and Bills, 37. A person cannot be charged as an indorser, unless his name appears in some way written on the paper, whatever other liability may arise from circumstances of which the paper affords no indication.—2 Parsons on Notes and Bills, 15 ; *May v. Bell*, 27 Ala. 515.

2. The equitable lien of a vendor of lands, for the payment of the purchase-money, though he has made a conveyance, expressing on its face the payment thereof, was first distinctly recognized in this court in *Foster v. Trustees of the Atheneum*, 3 Ala. 302. The preceding case of *Dupphey v. Frenage*, 3 Stew. & Port. 315, proceeds on the ground, that the lien was a part of the doctrine and principles of our courts of equity, but does not enter into a discussion of the question. Without an express adjudication of this court, the profession, and the community at large, have doubtless, from the earliest history of the State, recognized, and advised, and entered into transactions, without doubting that the lien, as a matter of law, would be raised and enforced by a court of equity, for the protection and indemnity of the vendor, unless, from the nature and facts of the particular transaction, he has waived it. Adopting the language of the court in *Foster v. The Trustees of the Atheneum*, it must be regarded as settled in this State, that " the vendor, in the absence of any agreement to the contrary, retains a lien on the land he has sold and conveyed, for the unpaid purchase-money ; and that this lien will be enforced against a purchaser with notice ;" and we add, against all persons, except *bona fide* purchasers without notice.

3. Whether the lien will accompany an assignment of the bond or note given for the purchase-money, is a question embarrassed by irreconcilable conflict of authority in those States of the Union which recognize its existence. The question was first presented to this court in the case of *Hall v. Click*, 5 Ala. 363, in which the transfer of the note was by delivery, without indorsement. An error crept into the syllabus of the case, which the statement of facts corrects, indicating that the assignment was expressly *without recourse ;* which has sometimes led to the conclusion, that the decision was limited to assignments of that character ; but the assignment was by delivery *without indorsement*, as is expressly recited in the statement of facts. The court, determining the lien did not pass to the transferree, say : "The facts of this case relieve us from the necessity of considering, whether, in any case, the equitable lien of a vendor should be enforced at the suit of an assignee. It is quite enough to say, that there has been no assignment of the lien, and

[Bankhead v. Owen et al.]

that there is no liability, so far as the bill and answer inform us, on the part of Dickerson (the vendor) "to pay Click's" (the vendee) "note."

The question was next discussed, though it did not arise, and, consequently, what is said is mere *dictum*, in *White v. Stover*, 10 Ala. 441; and the opinion is expressed, that the lien would pass to a transferree taking by delivery, without indorsement, the notes for the purchase-money. The judge delivering the opinion falls into the error of supposing that, in *Hall v. Click, supra*, the transfer of the notes was by indorsement expressed to be *without recourse.* We can not perceive, if such had been the fact, that it would, in reason or principle, have justified any distinction in the two cases; for, as we have said, so far as the responsibility of the transferror is involved, it is not different, but the same in either case. It is enough to say, however, of that case, that the question was not involved. The vendor, having parted with the notes without indorsement, afterwards obtained them, on a valuable consideration, and he claimed to enforce the lien, not as an assignee, but by virtue of his original title, to which, with all its incidents and equities, he was remitted, when the notes were returned to him; subject, of course, to any defense, or equity, the makers may have acquired against the transferree, while the holder of the notes.—*Page v. Green,* 6 Conn. 338; *Lindsey v. Bates,* 42 Miss. 397; *Cotton v. Mc-Gehee,* 54 *Ib.* 570. Neither the transfer of the notes, nor his subsequent acquisition of them, operated an extinguishment of them; nor was there any change of the relation existing between him and the vendee. The vendee stood as his debtor, holding his estate, which a court of equity would not, as between them, permit him to keep, without paying the consideration money. The case, in the light of its real facts—and it is by these its authority as a precedent is to be determined—was that of vendor and vendee, not presenting any question of the rights and equities of a transferree.

The next case, in which an opinion on the question was expressed, is that of *Plowman v. Riddle,* 14 Ala. 169; in which the vendor had sold and transferred a mere equity, and had transferred the notes for the purchase-money by delivery, as collateral security for the payment of a debt due from him to the transferree. The court say: "The rule is settled in this court, that the equitable lien of a vendor will pass to the assignee of a note, given in part payment of the purchase-money." The only authority cited in support of the proposition is *Roper v. McCook,* 7 Ala. 318; which was not a case in which the vendor had an equitable lien, but in which he had reserved the legal title as a security for the

payment of the purchase-money. Confounding this class of cases with the equitable lien of the vendor, and general expressions which extend beyond the case before the court, has involved the question we are considering in some embarrassment, and produced an erroneous impression, that there is no substantial difference recognized between the security a vendor provides for himself, by retaining the legal title, and the lien or trust a court of equity will raise and enforce for his security, after a conveyance of the legal estate. But of this we shall have occasion to speak more fully hereafter. The court proceed to say : "It is clear that the lien, in the case at bar, is not lost, even upon the authority of the case in 5 Ala. Rep." *(Hall v. Click)*; "for the facts as disclosed show, that Riddle" (the vendor) "being indebted, transferred the notes to the Burts as collateral security ; consequently, the note is not transferred without recourse, for Riddle is liable for the debt until it is paid." The correctness of this decision cannot be doubted. The vendor had a direct and immediate interest in the payment of the notes, and there was nothing in the transaction to relieve a court of equity from the duty and necessity of raising and enforcing the lien for his protection and indemnity. If it was not raised and enforced, he would sustain loss to the same extent that he would have sustained if he had not parted with the notes. The debt, for which the notes were collateral security, may have been less than the amount of the notes ; the surplus, when received, would have been money had and received to his use.

Reviewing the cases, in the order in which they have been presented, the case of *Griggsby v. Hair*, 25 Ala. 327, is the next case, in which the question was considered ; and it was said : "It may safely be asserted, as a principle deducible from the decisions of this court, that when the vendor transfers a note, secured by a lien of this nature, either by indorsement or delivery, and binds himself for its payment to the assignee or transferree, the lien on the land, unless expressly waived, is retained, and passes as an incident to the note, and may be enforced by the assignee." Again, "It is true, if a note is assigned without recourse by the vendor, it amounts to an abandonment of the lien on his part, and his assignee can work out no equity to subject the land through him. But, whether or not the parties intended to abandon such lien, is a matter of fact to be gathered from the evidence, and the nature of the transaction." The correctness of the latter sentence may well be questioned, if it is to be construed as importing that, whatever may be the intention of the parties, or their agreement, the lien will in any

[Bankhead v. Owen et al.]

case pass to a transferree or assignee of the note for the pur-
chase-money, unless the vendor remains liable for its pay-
ment; for it is because of his liability, and through him, as
we shall presently see, and as is said in the sentence of the
opinion, preceding that to which we are referring, an equity
is worked out in favor of the assignee.

The next case which may be supposed to bear on the
question, is that of *Griffin v. Camack*, 36 Ala. 695, which
was a bill filed by an assignee of a judgment, founded on
notes given for the purchase-money of lands.   What was the
character of the transfer of the notes, is not expressly
stated; and there is nothing to indicate that it did not im-
pose liability on the vendor for their ultimate payment; nor
does it appear that the vendor had conveyed to the vendee.
The court say:   "We think the law is settled in this State,
that the unqualified transfer of a note, given for the pur-
chase-money of land, or of a judgment upon the note, is a
transfer of the vendor's lien on the land for the payment of
the note."   The law of the State seems to us expressed in
this sentence, with clearness, certainty, and precision; and
it cannot be qualified or limited by judicial decision.   It is
an *unqualified transfer*, which passes the lien, or carries it to
the assignee.   Indorsements of promissory notes are treated
by Judge Story, who but follows the elementary writers gener-
ally, as of four kinds: general, or absolute, restrictive, qualified
and conditional.   The first is, when the indorsement is in
blank, or filled up payable to the indorsee, or his order, with-
out any restrictive, or qualifying, or conditional words.   A
qualified indorsement "qualifies the duties, obligations, and
responsibilities of the indorser, resulting from the general
principles of law.   Thus, for example, an indorsement of a
note to A., "without recourse," or "at his own risk," &c.—
Story on Prom. Notes, §§ 141–146; *Hailey v. Falconer*, 32
Ala. 536.   An *unqualified transfer* of a promissory note—a
transfer without restriction or limitation, certainly without
an exclusion of all liability of the vendor for the ultimate
payment of the note—is the kind of transfer to which the
court referred in this case.   A transfer by delivery, generally,
is a transfer *without recourse*, and a *qualified*, as distinguished
from an *unqualified* transfer.   The case of *Wells v. Morrow*,
38 Ala. 125, was that of an unqualified transfer; or, if there
was any qualification, it was not in limitation or exclusion,
but in enlargement of the liability of the vendor for the
payment of the note—he was *"to stand good for it, until it is
paid."*

The equitable lien of a vendor is in the nature of a trust,
and the principle on which it rests is, "that a person who

(30)

has gotten the estate of another, ought not, in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money."—2 Story's Eq. § 1219. It is not, properly speaking, a matter of contract, nor is it strictly attributable to the intention of the parties. For, as is said in *Foster v. Trustees of Atheneum*, 3 Ala. 307, "so far as the presumed lien on the land for the purchase-money rests for support on the supposed intention of the parties, it may be confidently stated that, in this State, it rarely, if ever, exists in the contemplation of the parties, when a conveyance of the land is made. A much more just and rational foundation for it appears to be the principle of equity and justice, which forbids one to enjoy the property of another, without compensation, where it can be accomplished without injury to third persons." The nature and characteristics of the lien, as defined by Judge STORY, have been more than once approved in this court. He says: "The vendor, having the lien, has not any estate in, or right to the land; and it has been very correctly observed of the lien of a judgment creditor, that he has neither a *jus in re,* nor a *jus ad rem,* and, therefore, though he releases all his right to the land, he may extend it afterwards. The lien of a vendor for the purchase-money is not of so high and stringent a nature as that of a judgment creditor; for the latter binds the land according to the course of the common law, whereas the former is the mere creature of a court of equity, which it moulds and fashions according to its own purposes. It is, in short, a right which has no existence until it is established by the decree of a court in the particular case, and it is then made subservient to all the other equities between the parties, and is enforced in its own peculiar manner, and upon its own peculiar principles. It is not, therefore, an equitable estate in the land itself, although sometimes that appellation is loosely applied to it."— *Gilman v. Brown,* 1 Mason, 221; see, also, *Bayley v. Greenleaf,* 7 Wheat. 46.

The equitable lien of the vendor has not, in the course of our decisions, been carefully distinguished at all times from the security the vendor carves out for himself, by retaining in himself the legal estate until the payment of the purchase-money. The two are often spoken of, as if they were of the same character and operation; and yet they have no common element, except that each is a security for a debt—the one, by the contract of the parties; the other, by operation of law, and under a decree of a court of equity. There can be no just and proper distinction drawn between a mortgage to secure the payment of the purchase-money, executed contemporaneously with the conveyance of the land, and a reser-

vation of the legal estate, as a security for its payment.—
*Graham v. McCampbell*, Meigs, 52. The cases of *Roper v.
McCook* (7 Ala. 318), *Conner v. Banks* (18 Ala. 42), *Kelly v.
Payne* (18 Ala. 371), *Haley v. Bennett* (5 Porter, 452), *Chapman v. Chunn* (5 Ala. 397), *Owen v. Moore* (14 Ala. 640), *Burns
v. Taylor* (23 Ala. 255), *Bradford v. Harper* (25 Ala. 237),
*Driver v. Hudspeth* (16 Ala. 348), *Relfe v. Relfe* (34 Ala. 500),
and *Magruder v. Campbell* (40 Ala. 611), all concur that, when
the vendor retains the legal title as a security for the pur-
chase-money, all the essential incidents of a mortgage attach.
The vendor, retaining the legal estate, has *the right to and in
the land*, on which he may maintain ejectment for the recovery
of possession, compelling the vendee to resort to equity for
a redemption, or, rather, for a specific performance. He
may sue at law on the note, or bond, or bill given for the
purchase-money, or seek a foreclosure in equity; and these
remedies may be pursued concurrently. The only remedy
of the vendee is in equity for a specific performance; and
the court can not intervene for his relief, unless he aver, and
if the averment is not admitted prove, payment of the pur-
chase-money,—the part of the contract he was bound to per-
form. The vendee, who has obtained a conveyance, of
course is under no necessity of seeking any relief against the
vendor. No right to, or interest in the land, remains in the
vendor, and, consequently, he can not maintain ejectment for
its recovery. All the remedy he may pursue, other than an
ordinary action at law, for the recovery of the purchase-
money, is in equity for the enforcement of the lien or trust
the court raises and enforces for his protection and indem-
nity. The difference, in right and remedy, between the
equitable lien and the security the vendor creates for him-
self by retaining the legal estate, is so apparent, that it is
matter of surprise they should be so often spoken of as if
they were identical. Another difference may be remarked:
that the title of a *bona fide* purchaser without notice will pre-
vail over the equitable lien, while there can not be a *bona
fide* purchaser entitled to protection when the vendor retains
the legal estate.

An assignment or transfer of the bond or note given for
the purchase-money, when the vendor retains the title, will
pass the security, without regard to its character. The
transaction is then, in effect, a mortgage; the debt is the
principal, and the security an incident. The vendee can
never acquire the legal estate, until the debt is paid. The
equitable lien is a trust, or a security for the vendor only,
raised and enforced for his benefit, and only on the equity
existing between him and the vendee, that the one should

not lose, and the other should not keep the estate, without payment of the consideration money. The equity continues when the transfer of the note or bond involves him in liability for its payment. The transferree to whom he is liable is, by a court of equity, subrogated to the lien; and the court enforces it at his instance, in the payment of the debt, and to the relief of the vendor. But, when he parts with the debt, incurring no liability for its payment, the ground of equity ceases. The interest in the debt passes to the transferree, who has no equity superior to that of any other creditor.— 1 Lead. Cases in Equity, 454. This is the theory of the decisions in *Hall v. Click*, and *Griggsby v. Hair, supra*, and is asserted in *Plowman v. Riddle, supra*. At the last term, it was, after mature consideration, asserted in *Hightower v. Rigsby;* nor is it in conflict, as is earnestly insisted by the counsel for the appellee, with any direct adjudication of this court. The cases supposed to be in conflict (except *White v. Stover*, and *Griffin v. Camack, supra)* are all cases in which the vendor had retained the legal title, and covenanted to convey it only on the payment of the purchase-money.

It is on the principle of subrogation, when the transfer involves the transferror in liability, that the lien passes to the transferree. A party claiming subrogation to a security for a debt, which another party has obtained, either by operation of law, or by contract, if the security is not for the payment of the debt, but for the personal indemnity of the party obtaining it, is not entitled to it, if, as to such party, the debt or liability for it has ceased to exist.—*Houston v. Br. Bank Huntsville*, 25 Ala. 250.

Without valuable consideration, by gift, and by mere delivery, the appellee obtained the note for the purchase-money, from a transferree by delivery of the vendor; and at her suit the equitable lien of the vendor can not be raised and enforced.

The decree must be reversed, and a decree here rendered dismissing the bill. The next friend of the appellee must pay the costs in this court, and in the Chancery Court.