# Preston & Co. *v.* Ellington.

# Preston & Co. *v.* Daniel.

*Bills in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien; when assignee may enforce.*—Prior to the enactment of the statute approved February 13th, 1879 (Sess. Acts 1878-9, p. 171), the assignment of a promissory note, given for the purchase-money of land, did not pass to the assignee the right to enforce the vendor's equitable lien on the land, when the assignment was of such character that the vendor had no interest in the recovery of the debt, and would not sustain loss if it remained unpaid; the underlying principle being, that the equitable lien of the vendor was a trust chargeable upon the land for his se-

[Preston & Co. v. Ellington; same v. Daniel.]

curity and indemnity, when he had taken no independent security for the payment of the purchase-money, because one man ought not to be allowed to get and keep the lands of another without paying the consideration money; and an assignee of the notes was allowed to enforce this lien, on the principle of subrogation, only when such subrogation was necessary for the protection and indemnity of the vendor.

2. *Same; when vendor is remitted to original lien.*—The vendor's lien, although it did not pass to an assignee by delivery only, was not dis charged or extinguished by the assignment; and if he again acquired the notes, he might enforce the lien as if he had never parted with them.

3. *Same; assignment by delivery, and·subsequent indorsement without new consideration.*—If the notes are transferred by delivery merely, not imposing on the vendor any liability for their ultimate payment, and not passing to the assignee the right to enforce the equitable lien on the land, a subsequent indorsement or assignment in writing by the vendor requires no new consideration to support it, and clothes the assignee with full capacity to enforce the lien on the land.

4. *Parol evidence varying indorsement.*—An indorsement of a promissory note is a contract of defined legal operation and effect, and can not be varied by proof of a contemporaneous verbal agreement between the parties, not incorporated in it.

5. *Assignment of notes for purchase-money; priority of lien, as between assignees and assignor.*—Several notes being given for the purchase-money of land, and some of them being afterwards transferred by indorsement, the indorsement of each is, *pro tanto*, an assignment of the vendor's lien, and entitles the assignee to priority of payment, out of the proceeds of the sale of the land, before the notes retained by the vendor, without. · regard to the time of their maturity; but the vendor is entitled to the surplus remaining after the assigned notes have been paid in full, and may assert his right to it by petition filed in the cause while the fund is in court.

APPEAL from the Chancery Court of Butler.

Heard before the Hon. JNO. A. FOSTER.

These two cases were argued and submitted together, both in the court below, and in this court. The material facts shown by the records are these: In November, 1874, James Daniel sold a tract of land to Caswell Ellington, or to Mrs. Eliza Jane Ellington, his wife, and executed a conveyance to Mrs. Ellington; taking from said Ellington and wife, in payment of the purchase-money, their four promissory notes, for $450 each, payable December 1st, 1875, 1876, 1877, and 1878, respectively, to said James Daniel, or bearer, each declaring on its face that it was "as a payment of land bought by him, on which he resides." In September, 1876, Daniel purchased from W. R. Preston & Co. another tract of land, at the price of $1,500, and, in payment of the purchase-money, transferred to them, by delivery only, three of the notes given by the Ellingtons, reserving to himself the note which first fell due, and which was then past due and unpaid; and there was a verbal agreement between the parties, at the same time, that Daniel was not to be liable in any event on the assigned notes, and was to be entitled to $40 out of the proceeds of each note when collected, being the excess above the purchase-money agreed to be paid .

by him to said W. R. Preston & Co. Afterwards, at what precise time is not shown, for the purpose of enabling said W. R. Preston & Co. to enforce a vendor's lien on the land, and without any new consideration, Daniel indorsed each of the assigned notes, by writing on the back of each these words: "I transfer the within note to W. R. Preston & Co.," to which he signed his name.

On the 22d December, 1879, Preston & Co., as the assignees of the three notes held by them, filed their bill in said Chancery Court to enforce the vendor's lien on the lands; alleging that Caswell Ellington was insolvent when he signed the notes, and that he signed them only because it was thought necessary to give them validity. A demurrer to the bill, for want of equity, was interposed by the defendants, but was overruled by the chancellor; and at the July term, 1880, in pursuance of a written agreement filed in the cause, signed by both parties, a decree was entered by consent, declaring a lien on the lands, in favor of the complainants, to the amount of $1,200, payable in three equal annual installments, on the 1st October, 1880, 1881, and 1882, with interest from the 26th April, 1880; and ordering a sale of the lands by the register, on default being made in any of these payments. Default having been made in the payment of the first installment, the register advertised and sold the lands, pursuant to the terms of the decree, on the 1st Monday in November, 1881, F. M. Gilmer becoming the purchaser, at the price of $1,150; and the register filed his report of the sale on the 27th January, 1882, stating that the purchase-money had been paid, and that he had executed a conveyance to the purchaser.

On the 8th September, 1881, James Daniel filed his bill in said Chancery Court, against said Caswell Ellington and wife, and against said W. R. Preston & Co., seeking to enforce a vendor's lien on the lands for the amount due on the note which he had retained. His bill alleged the terms of the contract between himself and the Ellingtons, as above stated, his transfer and subsequent indorsement of three of the notes to W. R. Preston & Co., the filing of their bill, and the proceedings had in the cause; and prayed that a prior lien on the lands be declared in his favor, and that the lands be sold for its satisfaction, as well as for the satisfaction of the decree in favor of W. R. Preston & Co.; and, also, that the sale under that decree might be restrained, by order of the court, until the final hearing under his bill. A decree *pro confesso*, under this bill, was entered against Ellington and wife; and an answer was filed by W. R. Preston & Co., in which they denied Daniel's ownership of the note held by him, and alleged its payment; and they further alleged that, at the time of the contract between

themselves and Daniel, which was negotiated through the agency of F. M. Gilmer, said Gilmer had possession of said note, and represented that only a small balance was due on it, and agreed to waive any prior lien on the lands, in order that the lands might be first subjected to the payment of the other notes; that they were induced by these representations to accept the three notes of the Ellingtons, in payment of the purchase-money for their tract of land, with the understanding that they were secured by the vendor's lien on the land, it being well known that Ellington was insolvent; that by mistake, or oversight, the notes were not indorsed at the time they were delivered; and that the subsequent indorsement was made for the purpose of correcting this mistake, and enabling Preston & Co. to enforce the lien on the land.

The deposition of F. M. Gilmer was taken by Preston & Co., in which he stated the facts connected with the contract and negotiations substantially as alleged in their answer; and he further stated that the note held by Daniel was in fact paid and satisfied. The deposition of said Daniel was taken in his own behalf, in which he stated, in substance, that at the time of his contract with Preston & Co., through F. M. Gilmer as agent, it was agreed that the purchase-money should be "paid by the transfer by delivery of the three notes on the Ellingtons," and that he was not to be liable in any event for the payment of said notes; and that he afterwards made the written indorsement on said notes, without any consideration whatever, at the request of said Preston & Co.'s attorney, and on his assurance that such indorsement was necessary to enable them to enforce a vendor's lien on the lands, and would not render him personally liable in any manner.

In the cause of Preston & Co. v. Ellington, a petition was filed on the 28th February, 1882, by Steiner & McGehee, exhibiting an assignment to them by Ellington and wife, of the surplus proceeds of sale remaining in the register's hands after satisfying the decree in favor of Preston & Co., and praying that said surplus ($62) might be paid to them; and on the 3d March, 1882, a petition was filed in said cause by Daniel, stating the proceedings which had been had in both of the causes, and claiming a prior lien on the proceeds of sale for the amount due on the note held by him, which was alleged to be $325. His petition further stated, that he had given public notice of his claim at the sale by the register; that said Gilmer publicly announced at the sale that he purchased for Preston & Co.; and that Gilmer afterwards procured a conveyance to himself personally to be made by the register, "for the purpose, as petitioner believes, of securing a confirmation of the sale, if possible, to the prejudice of petitioner." The prayer of the

[Preston & Co. v. Ellington; same v. Daniel.]

petition was, 1st, that the sale by the register be set aside; or, 2d, that action on the report of sale be postponed until the next term of the court; or, 3d, that the surplus proceeds of sale, after satisfying the decree and costs, be paid to the petitioner; and, 4th, for other and further relief under the general prayer.

The two causes being submitted together, for final decree on the pleadings and proof, the chancellor held, 1st, that the transfer of the notes by Daniel to Preston & Co., by delivery merely, did not pass the vendor's lien; 2d, that the subsequent indorsement in writing, being without consideration, could neither create nor revive, in favor of the assignees, a right to enforce the vendor's lien on the land; 3d, that Daniel had a lien on the land, to the extent of the balance due on the first note; and, 4th, that the purchaser at the register's sale, not having in fact paid the purchase-money, was not entitled to a confirmation of the sale. He therefore rendered a decree, the same in each case, declaring a prior lien on the land in favor of Daniel, and ordering a reference to the register to ascertain the amount due on the note held by him; and further ordering the register not to deliver a deed to Gilmer, as the purchaser at his sale, unless the amount bid at the sale was actually paid into court within ninety days.

Preston & Co. appeal from these decrees, and here assign each part of them as error.

GUNTER & BLAKEY, for appellants.

BUELL & LANE, contra. (No briefs on file.)

BRICKELL, C. J.—The main question in these cases, which grow out of the same transactions, and in which the same parties are interested, may be thus stated: First, whether the lien of a vendor of lands, for the payment of the purchase-money, is extinguished if he transfers the notes given for the purchase-money, the nature and character of the transfer excluding his liability for the ultimate payment of the notes? If, after such transfer, without the intervention of a new consideration, the assignor, to enable the assignee to enforce the lien on the lands, indorses the notes in terms which · impose upon him a liability for their ultimate payment, in the event the holder exercises due diligence to recover of the maker, and fails, can the assignee enforce the lien? Can the legal effect of the indorsement be varied by parol evidence of an agreement, contemporaneously made, that the vendor should not be made personally or pecuniarily liable for the payment of the notes?

Prior to the statute approved February 13th, 1879 (Pam. Acts 1878–9, p. 171), which was subsequent to the present transaction, promissory notes, or other evidences of debt, given for the purchase-money of lands, when assigned, did not pass to the assignee the right to enforce the equitable lien of the vendor, if the assignment were of such nature and character that he had no interest in the recovery of the debt, and would not sustain loss if it was unpaid.—*Bankhead v. Owen*, 60 Ala. 457. The principle underlying the decisions asserting this, doctrine was, that the equitable lien of a vendor who had made a conveyance of lands, the purchase-money not being paid, and an independent security for its payment not having been taken, was a trust chargeable upon the lands for the security and in= demnity of the vendor, raised and enforced by a court of equity, because one man ought not in good conscience to get and keep the lands of another without paying the considera- tion money. The trust was raised only for the security and indemnity of the vendor; and it was upon a principle of sub- rogation that an assignee, claiming through him, was entitled to enforce it. The trust arising by construction or operation of law, for the personal indemnity of the vendor, a transferree, or assignee, was not subrogated to it, when subrogation was not necessary for the protection of the vendor.—*Bankhead v. Owen, supra; Hall v. Click*, 5 Ala. 363; *Grigsby v. Hair*, 25 Ala. 327. The trust or lien, however, was not discharged or extinguished by the assignment. The assignee had not an equity to enforce it, but it remained, as it was in its original creation, a trust or security for the payment of the purchase- money to the vendor; and if he subsequently acquired the notes, it was as capable of enforcement as if he had never parted with them.—*Bankhead v. Owen, supra; Green v. De- moss*, 10 Humph. 371; *Page v. Green*, 6 Conn. 338; *Lindsey v. Bates*, 42 Miss. 397; *Cotten v. McGehee*, 54 Miss. 570. We do not, therefore, assent to the proposition, which seems to be the basis of the chancellor's decree, that the original transfer of the notes by the vendor by delivery only, not imposing upon him liability for their payment, discharged or extinguished the lien upon the lands. The lien was merely suspended, while the notes remained in the hands of the assignee or transferree, who had not capacity to enforce it.

The subsequent indorsement of the notes by the vendor in writing is, in terms, a transfer of the legal title, and is a contract of specific legal import—a contract by which the vendor binds himself to pay the notes, in the event the trans- ferree, after the exercise of the diligence the law prescribes, was unable to obtain payment from the makers. A transfer of this character, it can not be questioned, clothes the transferree

[Preston & Co. v. Ellington; same v. Daniel.]

with full capacity to enforce the lien upon the lands for the payment of the notes. The original transfer may not have involved the vendor in liability for the payment of the notes, and no new consideration may have intervened for the subsequent indorsement. Whether the want of a consideration for the indorsement can be made the subject of inquiry, when the transferree is seeking only the enforcement of the lien upon the lands, and not the fixing upon the vendor a personal liability, it is not necessary now to consider. The subsequent indorsement was intended by the parties as an alteration or modification of the original, rather than as the making of a new contract. Before or after the consummation of a contract, the parties may alter, rescind or modify it; and to support the alteration, modification or rescission, it is not necessary that a new consideration should intervene. The mutual agreement of the parties supports it.—1 Brick. Dig. 394, § 233. If the consideration of the indorsement were now a matter upon which the rights of the parties were dependent, there is no reason for doubting that it is adequate.

The indorsement, as we have said, is, of itself, a contract of specific legal import; and there is no principle upon which it can be varied or altered by evidence of contemporaneous verbal agreements or stipulations which the parties did not incorporate into it. It may be conceded the evidence shows that the purpose of the indorsement was merely to enable the transferrees to enforce the lien upon the lands, and that it was verbally agreed the vendor was not to be bound personally for the payment of the notes. It has long been settled by the decisions of this court, that the indorsement of a promissory note by the payee, whether in full or in blank, is a contract having a defined legal operation and effect, which can not be varied by parol evidence.—1 Brick. Digest, 301, § 699; *Day v. Thompson*, 65 Ala. 269.

The indorsement of the notes operating as an assignment, *pro tanto*, of the lien upon the lands, entitled the assignee to payment in priority of the note retained by the vendor, though it was in point of time first due and payable. This has been settled by repeated decisions of this court, and is the general doctrine applicable to mortgages and collateral securities for the payment of debts. The assignment of the debt, when absolute and unconditional, is an assignment *pro tanto* of the mortgage or other security; and if the fund arising from the mortgage or other security is not sufficient to pay the entire debt, the assignee has a preference over the assignor.—*Cullum v. Erwin*, 4 Ala. 252; *Nelson v. Dunn*, 15 Ala. 501; *Grigsby v. Hair*, 25 Ala. 327. The vendor, Daniel, after the indorsement of three of the notes, retaining one of them, was in the

[Wilkinson v. Roper.]

relation of a subsequent incumbrancer. The only right he could assert was to be let in to redeem, upon payment of the notes indorsed, or to take the surplus of the proceeds of the sale of the lands remaining after satisfying the notes.

A redemption is not claimed; nor is the fairness or regularity of the sale made under the decree of the court, in the suit by the appellants for the enforcement of the lien, assailed; nor is the price bid for the lands alleged to be inadequate. The only right which Daniel could assert was a right to the surplus of the proceeds of the sale remaining after satisfying the decree in favor of the appellants. A petition filed in that cause, while the fund was under the control of the court, was the proper mode of asserting the right. The right of Daniel to the surplus is, of course, superior to any claim Steiner, McGehee & Co., as assignee of the Ellingtons, can claim. There is no event in which they would be entitled, unless there was a surplus of the proceeds of sale remaining after satisfying the whole purchase-money and the costs of suit.

We perceive no reason for setting aside the sale of the lands, or for withholding confirmation of it, and ordering a conveyance to be made to the purchaser.

The result is, the decrees of the chancellor must be reversed, and decrees here rendered in conformity to this opinion.