[Dowling *et al.* v. McCall.]

# Dowling *et al. v.* McCall.

*Bill in Equity to Enforce Vendor's Lien.*

1. *Vendor has lien for the purchase money on the land sold.*—In
the absence of an agreement to the contrary, the vendor re-
tains a lien on land for the unpaid purchase money, although
he has conveyed to the vendee by absolute deed reciting there-
in that the purchase money has been paid; which lien will be
enforced against all persons except *bona fide* purchasers with-
out notice.

2. *Vendor's lien; when lost.*—Where the personal obligation of the
vendee of land is taken by the vendor without more the law
implies the existence of a lien on the land for the security of
the purchase money; but if it be shown that the vendor
trusted exclusively to the credit and responsibility of the ven-
dee, and did not look to the lands as security, or did some
act which evidenced an intention to waive or discharge the
lien—such as taking independent security from the vendee—
the existence of the lien would be repelled.

3. *Burden on purchaser of land to show waiver of lien*—The burden
is on the purchaser of land to show that the lien for the pur-
chase money has been waived or displaced; and if under all
the circumstances it remains in doubt then the lien attaches.

APPEAL from Dale Chancery Court.

Heard before Hon. W. L. PARKS.

Mrs. M. E. McCall sold certain real property to S. D.
Dowling and wife, taking in part payment of the pur-
chase money a certificate of deposit. Subsequently, and
after payments on the deposit certificate had been made,
she gave up the same and took in lieu thereof the paper
set out in the opinion. This is a suit to enforce the ven-
dor's lien for the unpaid balance of the purchase money.
The facts which are necessary to be set out are stated in
the opinion. Decree for the complainant, Reversed and
bill dismissed.

SOLLIE & KIRKLAND, for appellants.

J. M. CARMICHAEL, *contra,* contended that as no express agreement was entered into that the vendor's lien should be given up, the lien still existed, citing, *Bradford v. Harper,* 25 Ala. 337; *Bankhead v. Owen,* 60 Ala. 457; *Haden v. Snell,* 69 Am. Dec. 294; *Willoughby v. Snell,* 5 N. H. 244; 16 Am. & Eng. Ency. Law, 862.

HARALSON, J.—It is a familiar principle in this State, that in the absence of an agreement to the contrary, the vendor retains a lien on land for the unpaid purchase money, although he has conveyed to the vendee by absolute deed, reciting therein, that the purchase money had been paid, which lien will be enforced against all persons, except *bona fide* purchasers without notice. When the personal obligation of the vendee has been taken for the purchase money, without more, the law implies the existence of the lien. But if it be shown that the vendor trusted exclusively to the credit and responsibility of the vendee, and did not look to the lands as security, or did some act, which evidenced an intention to waive or discharge the lien,—such as taking independent security from the vendee,—the existence of the lien would be repelled. The burden is on the purchaser to show that the lien has been waived or displaced.—*Bankhead v. Owen,* 60 Ala. 457; *Stringfellow v. Ivey,* 73 Ala. 209; *Glover v. Walker,* 107 Ala. 540; 3 Brick. Dig. 613, §§ 4-46. "If under all the circumstances, it remains in doubt, then the lien attaches. The difficulty lies in determining what circumstances are to be deemed sufficient to repel or displace the lien."— 2 Story Eq. Juris., § 1224.

2. We might have no difficulty, under these rules in holding that the complainant, when she conveyed the lands in question to respondents, by deed of the 28th of May, 1894, and took what is termed a certificate of deposit from Shelley D. Dowling, one of the respondents, for $2,197.22,—the same being for the entire purchase money for the lands, less $300 paid to her in cash,—did nothing in that act alone which evidenced an intention on her part to waive her vendor's lien on said lands for the payment of the purchase money therefor. It was nothing more, in substance and effect, than an acknowl-

[Dowling *et al.* v. McCall.]

edgement by said Dowling, that he had that much of the purchase money in his hands, which he agreed to pay her in such sum or sums and at such time or times as she might desire or request. Indeed, said Dowling refers to it in his deposition as a note. It was given in the form it was, with the intention, eveidently, on his part, that it might not bear interest. The acceptance of this certificate or receipt was not even *prima facie* payment or extinguishment of the indebtedness to which it referred. To have had that effect, it must have been received by complainant under agreement with the maker of it, either express or implied, and it should so be received; and there is an absence of evidence of any such agreement.—*Lane v. Jones*, 79 Ala. 156. Indeed the averments of the answer, and the evidence of the respondents, as well as that of complainant, show that it was not the intention of the parties that the purchase money was to be paid to complainant at the time the conveyance was executed by her.

3. The complainant held this paper until the 28th of October, 1898, and received various sums on it at different times, in cash and by the purchase of goods from Shelley D. Dowling, amounting in the aggregate, as the evidence tends to show, to sums sufficient to reduce the debt to about $1,000. On that date said Dowling executed and delivered to her a paper of which the following is a copy: "Ozark, Ala., Oct. 28th, 1898. We or either of us promise to pay Mrs. Mary E. McCall, ten dollars on the first day of each month during her natural life, for value received. (Signed) Shelley D. Dowling, Drucilla Dowling." As to the giving of this paper, complaint sets up that she received it under protest and earnest objection, and to employ her language,—"that Shelley D. Dowling came to her room alone, with the ten dollar note and asked of her to see the certificate of deposit, and getting possession of it, placed in her lap the note and then without her consent and against her will, took away the certificate of deposit, leaving the ten dollar note with her," and to this effect she substantially deposed.

But, Shelley D., his mother, Drucilla, and Mrs. Anna J. Dowling,—both the latter sisters of complainant,—

testify to a different state of facts concerning this trans-action. The evidence tends to show, that Shelley D. was at the time in precarious health, supposed to have consumption, from which he was likely soon to die, and that complainant became uneasy and so expressed her-self, fearing that in case of his death, she might lose the money due by him, as evidenced by said deposit slip. Said Shelley D. deposed as to the transaction, that when he went with the paper to give it to her in exchange for the certificate of deposit, complainant said to him,—to employ the witness' language,—"that she was glad I came, and that she was glad to get the matter arranged, as she had requested me to do so, and that she was glad that this matter was settled forever, and that this would be the last of this transaction. Mrs. McCall replied (further) that she would get me the deposit slip and give me in exchange for the note and receipt I gave her. (Witness had deposed that he gave her at the same time a receipt for all that she owed him up to that time). She then went to her trunk and got the deposit slip and gave it to me. She further stated, that she was glad it was settled, and that she knew what she was going to get, which was $10 per month, and that she could live on it and was satisfied." He further testified, that he had made the contract with her for the exchange of the papers mentioned, previous to the 28th of October, 1898.

Mrs. Drucilla Dowling testified, that complainant af-terwards told her and Mrs. Anna J. Dowling, "that she was perfectly satisfied and delighted with the arrange-ments, and that she felt better satisfied on account of Shelley's health, and that she felt like, if anything hap-pened, she would be safe, as my name was signed to the note."

4. When interrogated as to the same matter, Mrs. Anna J. Dowling testified, that soon after the time of the date of the execution of said note, the complainant told her that "she was well satisfied with the arrangements; that ten dollars per month was enough; that it would not take so much to pay Dr. McNair and her other ex-penses, and she said she wanted Drucilla Dowling to sign the note which she had done, and that now she was well pleased, as she wanted some security, as Shelley

might die, as his health was bad." Furthermore, it is shown by complainant herself, that she retained said note and received $20 on it,—ten dollars having been paid to her on the first days of November and December, 1898, respectively. She declined to receive any further payments on it, though Shelley D. sent her the payment falling due 1st January, 1899, and she returned it to him.

It would seem after all this, that the preponderance of the evidence is in favor of the respondents in the account they give of the transaction; that the complainant is mistaken in her recollection thereof, and that said note was taken freely in lieu of the certificate of deposit. Nor do the terms of the paper itself indicate that respondents were actuated by a disposition to defraud complainant, and impose on her a hard and unconscionable bargain. In eight years and four months, respondents by paying $10 a month, would pay the entire $1,000 which they say , and the evidence tends to show, only remained due on the purchase price of said land. There is no evidence that it is not a good and solvent note; and, moreover, it contains no stipulation that the obligation to pay ceases, at any other time than at the death of complainant, whether that event shall happen earlier or later than the $1,000 shall have been paid.

We need not decide whether this note carries with it a vendor's lien on the land or not. We make no deliverance on that subject. All we do decide is, that both parties are committed to the terms of said note, as for the payment of the balance due on said lands, and it is of binding force between them. This bill was filed on the 22nd December, 1898, when nothing was due on the note, and until the respondents are in default in their payments to an amount of which a court of equity will entertain jurisdiction, it would be premature to consider the question of vendor's lien growing out of the transaction.

It follows, the decree of the court below must be reversed. One will be here rendered, dismissing the case out of this court and the court below.

Reversed and rendered.