# Hightower *v.* Rigsby.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien; against whom asserted.*—When a vendor sells land on a credit, and executes to the purchaser an absolute conveyance, reciting therein the payment of the purchase-money, and not taking a mortgage or other security for its payment, he may nevertheless assert a vendor's lien on the land, as against the original purchaser, his heirs, or any one claiming under him or them by voluntary conveyance; but not against a sub-purchaser for valuable consideration, who has paid the purchase-money in good faith, without notice of the outstanding lien; and when he seeks to enforce such lien against a sub-purchaser who has made full payment, the *onus* is on him to prove actual notice, or knowledge of facts sufficient to charge a party with implied notice.

2. *Same; when sub-purchaser is chargeable with implied notice.*—Declarations by the holder of one of the notes given for the purchase-money, asserting a lien on the land, but not explaining its nature, reported to a sub-purchaser of the land by the hearers, who at the same time derided the asserted lien, are not sufficient to put the sub-purchaser on inquiry, and thus charge him with

implied notice of an outstanding vendor's lien, when the person holding the note has no connection with the title.

3　*Same; who may assert.*—When the notes given for the purchase-money are transferred by delivery merely, or without recourse on the vendor, the transferree or holder can not assert a vendor's lien on the land. (Criticising, explaining, and limiting *White v. Stover*, 10 Ala. 443.)

APPEAL from the Chancery Court of Randolph.

Heard before the Hon. N. S. GRAHAM.

The bill in this case was filed on the 3d November, 1873, by William Hightower against Samuel Rigsby, and sought to enforce a vendor's lien on land for the unpaid purchase-money. The allegations of the bill are in these words: "Orator charges, that on or about the 1st day of August, 1871, one William D. Heaton sold and *deeded* to one Andrew Rigsby the following lands," describing them, "and put him in the possession thereof; for which the said Heaton took the note of the said Rigsby, payable to himself or bearer by the 25th of the next December following, for about $215, as part of the purchase-money of said lands, and put the said Andrew Rigsby in the possession of the same. Orator charges, that the said Andrew Rigsby, shortly thereafter, sold and *deeded* said lands to Samuel Rigsby, his brother, and put him in the possession thereof; that said Samuel has not paid said Andrew Rigsby for said lands; that said Samuel Rigsby had notice, before, at the time of, and since his said purchase, that said note was outstanding, unpaid, and a lien on said lands. Orator charges, that he is the *bona fide* owner of said note; that it is due and unpaid; that it is lost, and, from information which he believes to be true, he charges that said note went into the possession of said Samuel Rigsby, and is now there, or has been lost, and is wholly unpaid."

The defendant answered the bill, denying its allegations, and setting up the defense of a *bona fide* purchase for valuable consideration without notice. In support of this defense, the deposition of the defendant himself was taken, in which he thus testified: "I did not have any notice that any person had a claim against said land. After I had purchased the land, I saw the complainant, and told him I wanted to see the claim he held against the land. 'He said, *By G—, I don't hold any thing: I had a note, and I lost it.*' It was in September, 1872, or thereabouts, that complainant spoke to me about having any claim against Andrew Rigsby. I paid for the land on the 16th September, 1872, every cent of it. I paid a mule, at $125, a wagon, at $40, and $35 in cash." In answer to cross-interrogatories on the part of the complainant, he further testified: "About the last of September,

[Hightower v. Rigsby.]

1872, W. D. Lovorn and W. H. Butler said, that they had heard Hightower said he had a lien on said land, but that they did not think he had any lien on it. Lovorn said, he would not give a pinch of snuff for the lien Hightower had; and Butler said, that he would not give a piece of pencil that he was holding in his hand for it. This was between the time I had bought the land, and the time I paid for it." The complainant testified, as a witness for himself, that he "got" the note from Heaton, and handed it to his wife, who, in the presence of Andrew Rigsby, placed it in one of her drawers at home; that it had been lost, or stolen, and had never been paid; and that he told the defendant, 'he should hold the land responsible for it;' but he did not state when this conversation took place, nor whether the note was transferred to him by indorsement, or by delivery merely. Heaton testified, as a witness for the complainant, that the note had never been paid, so far as he knew. Andrew Rigsby, a witness for the defendant, testified, that the complainant, when he carried the note home, handed it to · him, and he gave it to the complainant's wife to keep for him; and that the note was thus given to him, and accepted by him, in full payment and settlement of a demand which he held against the complainant. In reference to these matters, the testimony of said Andrew Rigsby and the complainant was conflicting.

On final hearing, on pleadings and proof, the chancellor held that the evidence sustained the defendant's plea of a purchase for valuable consideration without notice. He therefore dismissed the bill, and his decree is now assigned as error.

HUDSON & HUDSON, for appellant.

JAMES AIKEN, and M. M. TEAGUE, contra.

MANNING, J.—A vendor of land, who sells the same on a credit, and, without having received payment of the purchase money, or taking back a mortgage or any other security for the payment of it, executes his conveyance, containing an acknowledgment of satisfaction in full of the price,—notwithstanding this, is held in equity entitled to a lien on the land, and a decree to have it sold for the payment of the purchase-money, so long as the land remains the property of the vendee, or his heirs, or any person holding it by a merely voluntary conveyance from him or them. But, when the estate has passed to a purchaser for a valuable consideration, who has paid the purchase-money, the original vendor's lien is gone, unless he shows that such purchaser

[Hightower v. Rigsby.]

acquired it with information or knowledge that the first price had not been paid, or was informed thereof before he had paid the consideration for which the property was sold to him. The burden of proving this is on him, who, though he had not received the price for which he sold the land, yet made a conveyance of it, in which he certified to the world that he had. Any person, who desires to buy the land afterwards, is justified in supposing that what is so certified is true.

2. We shall not discuss the question of veracity in this cause, between appellant, who was a transferree of the note for a part of the purchase-money, and Andrew Rigsby, the maker of it. Samuel Rigsby, the subsequent purchaser, bought the land in controversy, for a valuable consideration, from Andrew, and paid the same to him. The purchase was agreed on in July, and consummated, by payment and conveyance, on the 16th of September, 1872. When appellant told Samuel Rigsby that he claimed a lien on the land, he does not say. It may have been after the purchase of the latter was complete. Indeed, it must have been so, according to defendant's testimony; for he said it was about the last of September that appellant informed him of his claim. True, he admitted that, before the deed was made, certain persons named had told him that appellant had said he had a lien on the land, but that they did not think he had, and would not give, as one said, "a pinch of snuff," or as another said, "a lead pencil" then in his hand, for appellant's lien. How such a lien was supposed to have been created, does not appear to have been explained in these conversations; and as appellant had not, so far as the record shows, ever owned the land, or been in any way connected with the title, what was said by third persons about his claiming a lien, in a conversation with defendant, in which the pretense was at the same time derided, might be regarded by defendant as mere idle talk. It was not such information as made it necessary for him to seek appellant and inquire of him about the matter.

3. Besides this, complainant was not an indorsee of the promissory note made by Andrew Rigsby. Mr. Heaton, to whom it was given, and who sold the land to Andrew Rigsby, seems to have transferred the note to appellant by delivery merely, and therefore without recourse. Upon this subject, the allegation in the bill is : " Orator charges, that he is the *bona fide* owner of said note, that it is due and unpaid," &c. The equitable lien of a vendor, for the price of land that he has conveyed to the purchaser, is not stipulated for in the contract of sale. It is "the creature of courts of equity ;" and

the principle upon which they have established it is, "that a person who has gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money."—2 Story's Eq. § 1219. The lien is raised for the benefit of the vendor. But, when the vendor transfers the note for value to another person, without indorsing it, or by an indorsement without recourse, and without an engagement or guaranty that it shall be paid, then, according to the weight of adjudged cases, the right to the vendor's equitable lien becomes extinguished.—2 Story's Eq. § 1227 of the 12th Ed. ; *Hall's Ex'rs v. Click*, 5 Ala. 363 ; 1 Leading Cases in Equity, 3d Amer. Ed. Hare & W.'s notes, 366 *et seq.*

In *White v. Stover* (10 Ala. 443), some views are expressed by GOLDTHWAITE, J., not agreeing with what we have here said. But his observations went beyond the points it was necessary for the court to decide. The suit there was by the vendor himself, upon notes payable to him, which, after he had transferred them without indorsement to another, were returned to him, and he "gave his own in place of them ;" from which it seems manifest, that his transfer of them was not *without recourse*, but upon some engagement that he was to see them paid. After this, the land was sold at sheriff's sale, under an execution against the vendee, to purchasers who had notice that the notes for the purchase-money had not been paid, and that the vendor claimed a lien therefor on the land. The court enforced the lien in the vendor's favor. The learned judge was at fault, perhaps misled by the headnote, in saying of *Hall's Ex'rs v. Click* (*supra*), that "there the note was *assigned without recourse ;* though we do not perceive how this would make a different case, or change the result." It was not assigned at all. As in the present case, it was transferred by delivery merely ; but it was alleged that, when the vendor so transferred the note, he had promised to pay it, if the money could not be made of the vendee, its maker. This, though, was denied ; and the case made was that of a transferree by delivery, of a note given to a vendor for the land sold by him, claiming as such transferree, simply, the benefit of a vendor's equitable lien on the land for the payment of the note. See latter part of opinion of COLLIER, C. J., 5 Ala. 366. The court decided that the transferree was not entitled to the lien.

What Judge GOLDTHWAITE says further, in *White v. Stover*, about the "similitude between a lien of this description and a mortgage," to the effect that there is not much difference between them, must be regarded as his own individual views, though worthy, as such, of great respect. For, in *Houston*

v. *Stanton*, in the very next volume of our reports (11 Ala. 412), the nature of this equitable lien of a vendor is more particularly considered; and COLLIER, C. J., in the course of his opinion, quotes, and adopts, without disapprobation by any of the other judges, the views of Mr. Justice Story, as expressed in *Gilman v. Brown* (1 Mason, 191). He says of this equitable lien of a vendor in land that he has conveyed, it is "the mere creature of a court of equity, * * * a right which has no existence until it is established by the decree of the court in the particular case, and is then made subservient to all other equities between the parties. * * * It is not, therefore, an equitable *estate* in the land itself, although sometimes that appellation is loosely applied to it." This, it will be perceived, makes such a lien quite a different thing from a mortgage. When established, it has some of the incidents of a mortgage, perhaps. It is a security, like it, for the payment of a debt. But it can hardly be in harmony with our registration laws to give to it any greater extension or reach than is conceded to it in *Hall's Ex'rs v. Click, Grigsby v. Hair*, 25 Ala. 327, and other cases agreeing with them.—See the cases collected and compared in 1 Leading Ca. in Eq., with Hare & Wal. Notes (3d Amer. Ed.) 362, *et seq*.

Let the decree of the chancellor be affirmed.