# Stabler, adm'r &c. *v.* Spencer.

### *Bill in Equity to enforce Vendor's Lien on Land.*

1. *Vendor's lien on lands sold under probate decree; transfer and renewal of note.*—When lands are sold for division among the heirs, under a decree of the Probate Court, a vendor's lien is reserved by force of the statute (Code, § 2468), until the purchase-money is paid in full; and if the administrator makes final settlement before the entire purchase-money is paid, and, being himself one of the heirs, accepts the purchaser's unpaid note as a part of his distributive share, the lien passes to him as an incident of the debt; and though he then reports the purchase-money as paid, and executes a conveyance to the purchaser under the order of the court, the lien is not thereby lost or destroyed; nor is it waived or lost by the subsequent renewal of the note.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 15th September, 1876, by Benjamin D. Portis, as administrator of the estate of Solomon W. Portis, deceased, and seems to have been revived and prosecuted in the name of M. L. Stabler, as administrator *de bonis non*, though the record does not show how or when the change was made. Calvin C. Spencer was the only defendant to the bill, the object of which was to enforce a vendor's lien on a tract of land, for an alleged unpaid balance of the purchase-money. The lands had belonged to the estate of Jordan Tucker, deceased, and were sold by his administrators, under an order of the Probate Court, on the 1st February, 1858, for equitable division among the heirs. Spencer became the purchaser at that sale, and executed his notes, with sureties, for the purchase-money, according to the terms of the decree. The sale was reported to the court, and was confirmed by it; and on a final settlement afterwards

[Stabler, adm'r &c. v. Spencer.]

made by the administrators, Mrs. Tucker, the widow, who was one of the administrators, accepted one of Spencer's notes in part payment of her distributive share of the money. The administrators then reported that the purchase-money had been paid, and executed a conveyance to the purchaser under the order of the court. The note sought to be enforced as a charge on the land was afterwards given to Mrs. Tucker, in renewal of the original note, which was partly paid. Mrs. Tucker, afterwards Mrs. Davis, transferred the note, as collateral security, to Solomon W. Portis; and by an amendment of the bill, she was introduced as a co-complainant with the administrator of said Portis, and it was alleged that the suit was prosecuted for their joint benefit. On final hearing, on pleadings and proof, the chancellor dismissed the bill, and his decree is now assigned as error.

S. J. CUMMING, for appellant.

STONE, J.—The question, when and in what conditions a lien may be asserted against lands sold, for unpaid purchase-money, has been many times before this court, and the decisions have not been in strict harmony. In making sales of land, different methods are observed. Sometimes, the seller retains the title, either by a failure to convey, or by conveying the title, and receiving back a contemporaneous mortgage of the premises to secure the payment of the purchase-money. In these cases (the mortgage, if one be made, being properly recorded), the lands stand as a permanent security for the debt, no matter into whose hands either may pass. This, upon the theory, that the vendor has retained the title as a security for the debt. Neither the vendee, nor any one claiming under him, can coerce a title, or obtain specific performance, without payment of the purchase-money. He is without title, and, to obtain one, must become actor; and, to obtain equitable relief coercively, he must first do equity by paying the purchase-price of the land.

When the sale is consummated by a conveyance of the title, and there is no mortgage taken, then the vendor's claim on the land for unpaid purchase-money is a pure equity in him, the creature of a court of equity; and it "has no [material] existence, until it is established by the decree of a court in the particular case." It "is in the nature of a trust, and the principle on which it rests is, 'that a person who has gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money.'"—2 Sto. Eq. Jur. § 1219. The vendor has no equitable estate in the land, but the vendee holds it in trust

(32)

[Stabler, adm'r &c. v. Spencer.]

that he will pay the purchase-money to the vendor; and a purchaser from the vendee, with knowledge of this lien and trust, will acquire no better title than the vendee had.

Many of the discrepancies in our decisions have grown out of a failure to observe the difference in the two classes of sales noted above. In *Bankhead v. Owen,* 60 Ala. 457, our former decisions are collated, reviewed, and explained. See, also, *Hightower v. Rigsby,* 56 Ala. 126. In these cases, we held that, when title is made to the purchaser at the time of the sale, the vendor's lien does not pass by a mere transfer of the note which evidences the consideration money. It requires an indorsement, or other contract, fixing a liability on the transferror of the purchase-money debt, to carry with it the vendor's equitable lien. Without something equivalent to this, the lien does not pass with the mere transfer of the note.

The salient facts of the present case are as follows: Lands of the estate of one Tucker were sold by his administrators, Moore and Mrs. Tucker, under an order of sale made for division. Spencer became the purchaser, and gave his notes for the unpaid purchase-money, due at one and two years. He, as the statute required, received no title, the purchase-money not being paid in full. He made partial payments, but there remained unpaid several hundred dollars of the purchase-money. At this stage of the administration, the administrators came to a final settlement of the estate, the distributees agreeing to receive and receiving the uncollected notes due the estate in part liquidation of their distributive interests. Mrs. Tucker was entitled to share in the distribution, and there was due to her a money commutation for her dower interest in the lands. She agreed to receive, and did receive, the notes of Spencer, given for the lands, in part payment of her said claim as distributee and dowress, and executed her receipt in full. The administrators, of whom she was one, thereupon reported to the court that Spencer had paid the purchase-money in full, and asked for an order to make title, which was granted. They subsequently executed a title to Spencer, leaving several hundred dollars of the purchase-money unpaid. Mrs. Tucker received and receipted for the notes February 14; the report of payment of the purchase-money, and the order to make title, were made February 23; and the deed to Spencer was made March 5. At some time after Mrs. Tucker acquired the notes—date not given—Spencer executed a note, without sureties, to Mrs. Tucker for the balance he owed her on the land notes. This note was renewed once afterwards, and the present suit is brought to subject the lands so purchased by Spencer to the

payment of this last note. The question this record raises is, vendor's lien *vel non.*

On sales of lands made under an order of the Probate Court, such as this was, the statute fastens a lien for the purchase-money, until payment in full is made.—Code of 1876, § 2468. Till then, there should be no title made to the purchaser. But there can be no question that a lien was reserved on this land for the purchase-money, until the title was made, and that that lien vested in Mrs. Tucker when she, before the title was executed, became the owner of the purchase-money notes. The question, then, is narrowed to the inquiry, did the giving of the renewed note by Spencer, and the execution of the title by the administrators, destroy the lien? The case of *Woodward v. Echols,* 58 Ala. 665, answers this question in the negative. In that case, a transfer of the note had been made before the title was executed, and the note was afterwards renewed. We then said: "The legal title remaining in the vendor, as a security for the purchase-money, the relation of the parties was, in legal effect, that of mortgagor and mortgagee. The transfer of the note for the purchase-money, whatever may have been its form, whether by delivery, or in writing freeing the vendor from responsibility for its ultimate payment, was a transfer of the security for its payment; or, rather, the security which was incident to the debt, passed by a transfer of the debt, the contrary not being stipulated. * * * The conveyance subsequently made is subordinate to it, and offers no obstacle to its enforcement. The taking a new note from the appellee, extending the day of payment, did not impair the security."

The decree of the chancellor is reversed, and a decree here rendered, granting complainants relief. It is referred to the register to take and report an account, ascertaining the proper amount of purchase-money due and unpaid, with the proper interest thereon; and either party may re-examine witnesses heretofore examined, on the question of the amount of unpaid indebtedness, including all payments made. All others questions are reserved for decision by the chancellor.

Reversed and rendered.