# Daily's Adm'r *v.* Reid.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Infants; how brought in as parties.*—A decree *pro confesso*, against an infant, is unauthorized and void ; and the cause is not at issue as to him, until after a guardian *ad litem* has been appointed, and has answered.

2. *Same; depositions taken before answer.*—Depositions in a chancery cause, taken before the cause is at issue as against an infant who is a material defendant, will be disallowed as evidence against him, and no motion to suppress them is necessary.

3. *Vendor's lien; when assignee may assert.*—An assignee of a promissory note, given for the purchase-money of land, can not assert a ven-

dor's lien on land, when the transfer was by delivery merely. (Changed by statute approved Feb. 13, 1879.—Sess. Acts 1878-9, p. 171.)

APPEAL from the Chancery Court of Blount.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 1st December, 1871, on the equity side of the Circuit Court of Blount county (under the provisions of the constitution of 1868), by George Daily, against the administrator of the insolvent estate of James Reid, deceased, together with the surviving widow of said decedent, and his infant daughter, James Eliza P. Reid. Its object was to enforce an alleged vendor's lien on a tract of land, which the complainant had sold and conveyed to one Matthew Nelson, and which Nelson afterwards sold to said James Reid. The cause having been transferred to the Chancery Court, the chancellor dismissed the bill, on final hearing on pleadings and proof; and his decree is now assigned as error. The opinion states the material facts.

HAMILL & DICKINSON, for appellant.

STONE, J.—The bill in this case was filed to enforce an alleged vendor's lien. The bill was filed in 1871, by George Daily, the vendor, who was then in life. Pending the suit, George Daily died, and there was a revivor in the name of George J. Daily, his administrator. The bill avers that, in 1856, Daily sold the lands sought to be condemned, to Nelson, at the price of one thousand dollars, to be paid, and made him a deed, conveying title to him. The bill then avers that Nelson, on the 13th February, 1860, having paid nothing for said land, sold and conveyed the same to James Reid, at the agreed price of thirteen hundred dollars, part cash and part credit; that three notes, part of the purchase-money due from James Reid to Nelson, became the property of Daily, the complainant, in part payment or security of the purchase-money due from Nelson to Daily, and that when the bill was filed, there was due and unpaid, of the principal and interest of said notes, the sum of three hundred and seventy-eight 40-100 dollars. The notes are made exhibits to the bill. Two of them bear date February 15th, 1860, and are payable to Nelson; each for one hundred and fifty dollars, due severally 25th December, 1860, and 1861. These notes are without Nelson's indorsement, being traded, if at all, by delivery. The other note bears date February 28th, 1860, due 15th April then next, for the sum of two hundred and seventy dollars, payable directly to George Daily.

Before this suit was brought, James Reid and Nelson had

both died. Dennis Reid, administrator of James Reid, Eliza-beth Reid, his widow, and James Eliza P. Reid, his infant daughter, under fourteen years of age, were made defendants to the bill. The estate of James Reid was reported and de-clared insolvent, and one hundred and eighty of the two hun-dred and eighty acres of land sold, had been allotted and set apart to the said minor child, as exempt to and for her. The other hundred acres had been sold under decree of the Probate Court, for the payment of debts, and the proceeds had gone into the final settlement of the insolvent estate of said James Reid. All these proceedings took place before this bill was filed, and are averred in the bill. The one hundred and eighty acres of land so allotted to James Eliza P. Reid, the infant, it is the object of this bill to have sold. It will thus be seen that James Eliza P. Reid, the infant, is the only defendant sought to be affected by the decree.

A summons was issued and served; the service for James Eliza P. Reid being perfected by service on her mother, for her, December 9th, 1871. On the 8th January, 1872, Barclift, having consented thereto in writing, was appointed guardian *ad litem* for the infant defendant; and the same day, decrees *pro confesso* were moved for and obtained against all the de-fendants, the infant included. No answer for the infant de-fendant was put in by Barclift, nor by any one else, until Octo-ber 21st, 1876, after Shelton had been appointed guardian *ad litem*. He put in the customary answer, denying the allega-tions of the bill.

On the 26th day of January, 1872, complainant filed with the register interrogatories to many witnesses, to be examined for him. No notice of the filing of these interrogatories was served on any of the defendants, nor were any cross-interroga-tories filed. On the same day (26th January, 1872), commis-sion was issued to take the testimony of these witnesses, and it was soon afterwards taken. This, it will be observed, was before the bill was put at issue against the infant, by answer of the guardian *ad litem*. It need scarcely be observed, that this was palpably irregular. There is no authorized practice allow-ing a decree *pro confesso* against an infant, and such proceed-ing, when attempted, is simply void; and testimony, thus taken, needs no motion to have it suppressed. The Court of Chancery is the guardian of all infant litigants before it, and will permit no such irregularity and error to pass unredressed. The testi-mony, falling within this rule, must be disallowed, so far as the rights of the infant defendant are concerned.—*Stammers v. Mc-Naughten*, 57 Ala. 277; *Lee v. Lee*, 55 Ala. 590. This ruling applies to, and excludes the testimony of George Daily, Dennis Reid, A. J. Brown, and James Blackwood.

27

[Marsh v. Marsh.]

The complainant's case rests mainly on the testimony of Champion Cornelius. He alone makes any direct proof that James Reid owed or owes any of the purchase-money of the lands; and he only speaks of an admission by Reid, in his lifetime, that he was indebted for the lands. He speaks of no amount he admitted he owed, and so we are entirely uninformed as to the sum due. There is another, and a fatal defect in the testimony. The bill, it will be remembered, charges that the three notes, made exhibits to the bill, furnish the evidence of the amount of the purchase-money due from Reid. These are the debts counted on, and claimed in the bill. There is an entire absence of testimony that these notes, or either of them, was given in the purchase of the land. They are all dated after the execution of the deed, one of them many days afterwards. Even if it had been shown that they were given in the purchase of the land, two of the notes are payable to Nelson, and are not indorsed. These could not maintain a bill by Daily, commenced when this suit was.—*Hightower v. Rigsby*, 56 Ala. 126. The bill must fail, for want of proof of this indispensable fact.

We need not consider the question of amendment; for, if allowed, the complainant must have failed for want of proof of the very foundation on which his suit rests.

The decree of the chancellor is affirmed.